# Exhibit C



**The Rubinstein Family Living Trust 6/25/10**

**EquiAlt Monthly Acct. #** ████████ **2419**

**01-31-20**



## SUMMARY OF TERMS

This document dated:  _January 31, 2020_ will serve as a summary to the PPM Agreement.

Amount of Investment: _$75,000.00_

Annual Rate: 8.00%

Payment requested: Monthly

Term: 48 months

Receipt of funds date: _January 31, 2020_

Payment start date (minimum of 45 days from today): _March 2020_

Payment will always be postmarked no later than 5th of the Month


Signed and mutually agreed by:


_[signature]_                                                    _____

Barry M. Rybicki                                          The Rubinstein Family

                                                                  Living Trust 6/25/10


EquiAlt Fund II, LLC



## SUMMARY OF TERMS

This document dated 1/30 2020 2019 will serve as a summary to the PPM Agreement.

Amount of Investment: $ 75,000

Annual Rate: 8.00%

Payment requested: (Monthly)   Semi-Annual    Annual    Growth

Term:  48 months

Receipt of funds date: 1/31/20

Payment start date (minimum of 45 days from today): _____

Payment will always be postmarked no later than 5th of the Month

Signed and mutually agreed by:

_____                    Steven J Rubinstein

Barry M. Rybicki

EquiAlt Fund II, LLC.                       TRACEY F RUBINSTEIN

                                            Tracey F. Rubinstein

**EXHIBIT A**

**FORM OF DEBENTURE**

**THIS SECURITY HAS NOT BEEN REGISTERED WITH THE U.S. SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND IS ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR RE-SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

**8.00% DEBENTURE**

**$75,000.00**                                                      **January 31, 2020**

FOR VALUE RECEIVED, the undersigned, EquiAlt Fund II, LLC, a Nevada limited liability company having an address of 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145 ("Maker"), promises to pay to the order of The Rubinstein Family Living Trust 6/25/10 having an address of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ("Holder"), the principal sum of Seventy Five Thousand and 00/100 ($75,000.00 (the "Principal Amount"), together with interest on the unpaid Principal Amount thereof computed from the date hereof (the "Commencement Date"), at the rates provided herein, on the Maturity Date defined in Section 1 hereof.

1.   Maturity.  The Principal Amount and any unpaid interest due under this debenture (the "Debenture") shall be due and payable in January 2024 (the "Maturity Date").

2.   Interest Rate and Payments.  Interest hereunder shall accrue as follows:

(a)      From the Commencement Date, interest shall accrue on the unpaid Principal Amount at the rate of Eight and 00/100 percent (8.00%) per annum.

(b)      Monthly payments will begin in March 2020.

EquiAlt Fund LLC                                      i

3.  Prepayment.  This Debenture may be prepaid in whole or in part at any time, without penalty or premium, it being understood and agreed that, except as expressly provided herein, Maker shall not be entitled, by virtue of any prepayment or otherwise, to a refund of interest, any other fees, points, charges and the like paid by Maker to Holder in connection with his Debenture.

4.  Waiver.  Maker hereby waives all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Maker further waives trial by jury.  No extension of time for payment of this Debenture or any installment hereof, no alteration, amendment or waiver of any provision of this Debenture and no release or substitution of any collateral securing Maker's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker under this Debenture.

5.  Default and Remedies.  At the election of the holder of this Debenture, all payments due hereunder may be accelerated, and this Debenture shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (1) Maker fails to pay on or before the date due, any amount payable hereunder; (2) Maker fails to perform or observe any other term or provision of this Debenture with respect to payment; or (3) Maker fails to perform or observe any other term or provision of this Debenture, which default is not cured within sixty (60) days of receipt of written notice.  In addition to the rights and remedies provided herein, the holder of this Debenture may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

Any forbearance by the holder of this Debenture in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Debenture or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Debenture.  The acceptance by the holder of this Debenture of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Debenture to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

6.  Assignment of Debenture.  If this Debenture is transferred in any manner by Holder, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof, provided, however, that any assignment by Holder must comply with applicable Federal and state securities laws, and Maker shall be entitled to demand an opinion of counsel opining that any transfer will comply with said laws.

EquiAlt Fund LLC

ii

7.  Waiver of Offset. By its acceptance of Holder's funds and execution of this Debenture, Maker acknowledges, agrees and confirms that, as of the time of signing, it has no defense, offset or counterclaim for any occurrence in relation to this Loan.

8.  Acceptable Currency. All payments of principal and interest hereunder are payable in lawful money of the United States of America.

9.  Joint and Several Obligations. If more than one person signs this Debenture, each person signs as a Maker, unless otherwise stated and shall be fully, jointly, severally and personally obligated to keep all of the promises made in this Debenture, including the promise to pay all sums due and owing.

10.  Miscellaneous.   This Debenture shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns. This Debenture shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.   This Debenture shall be exclusively governed by the laws of the State of Nevada without regard to choice of law consideration. Maker hereby irrevocably consents to the jurisdiction of the courts of the State of Nevada and of any federal court located in Nevada in connection with any action or proceeding arising out of or relating to this Debenture. This Debenture may not be changed or terminated except upon the prior written agreement of the Holder.   A determination that any portion of this Debenture is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Debenture to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

11.  Jury Waiver.      **MAKER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY MAKER OR THE HOLDER OF THIS DEBENTURE ON OR WITH RESPECT TO THIS DEBENTURE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.  MAKER AND HOLDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.  MAKER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN. FURTHER, MAKER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  MAKER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS DEBENTURE AND THAT HOLDER WOULD NOT EXTEND CREDIT TO MAKER IF THE**

**WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS DEBENTURE.**

*[Remainder of this page intentionally blank.]*

IN WITNESS WHEREOF, the Maker has executed this Debenture on the date first above written.

**MAKER:**

EquiAlt Fund II, LLC
a Nevada limited liability company

By:  EquiAlt LLC
    a Nevada limited liability company
    its Manager


By: _____
Name: _Barry M. Rybicki_____
Title: _Managing Director_____

Name of Prospective Purchaser: _RUBINSTEIN FAMILY LIVING TRUST 6/25/2010_

State of Domicile: _AZ_



## EQUIALT FUND II, LLC

### PROSPECTIVE PURCHASER QUESTIONNAIRE

INSTRUCTIONS:  IN ORDER TO INVEST IN EQUIALT FUND, LLC, YOU MUST COMPLETE THIS INVESTOR QUESTIONNAIRE BY FILLING IN THE INFORMATION CALLED FOR, CHECKING THE APPROPRIATE BOXES, AND SIGNING AT PAGE 3.  THEN, YOU MUST COMPLETE THE SUBSCRIPTIONS AGREEMENT BY DESIGNATING THE NUMBER OF UNITS TO BE PURCHASED, PROVIDING THE INFORMATION REQUIRED AND SIGNING.  NO SUBSCRIPTION IS EFFECTIVE UNTIL ACCEPTED BY THE COMPANY.

CONFIDENTIALITY:  THE INFORMATION THAT YOU PROVIDE WILL BE USED SOLELY FOR THE PURPOSES OF MAKING VARIOUS DETERMINATIONS IN CONNECTION WITH THE COMPANYS' COMPLIANCE WITH APPLICABLE SECURITIES LAWS.  NO FINANCIAL INFORMATION DISCLOSED HEREIN WILL BE DISCLOSED TO THIRD PARTIES OR USED FOR ANY PURPOSES OTHER THAN SUCH LEGAL DETERMINATIONS BY THE COMPANY AND ITS LEGAL COUNSEL.

<u>EQUIALT FUND II, LLC</u>

PROSPECTIVE PURCHASER QUESTIONNAIRE

TO:   EQUIALT FUND II, LLC

c/o DLA Piper

2000 Avenue of the Stars

Suite 400 North Tower

Los Angeles, CA 90067-4704

Ladies and Gentlemen:

In connection with the proposed purchase of Class A membership units (the "Securities") in EquiAlt Fund II, LLC (the "Company"), the undersigned hereby represents as follows:

1. **<u>Representations as to Accredited Investor Status.</u>** The undersigned has read the definition of "Accredited Investor" from Rule 501 of Regulation D attached hereto as "Exhibit A", and certifies that either (circle only one):

   A.  The undersigned is an "Accredited Investor" for one or more of the following reasons (circle all that apply):

      a.  The undersigned is an individual (not a partnership, corporation, etc.) whose individual net worth, or joint net worth with his or her spouse, presently exceeds $1,000,000;

      b.  The undersigned is an individual (not a partnership, corporation, etc.) who had an income in excess of $200,000 in each of the two most recent years, or joint income with their spouse in excess of $300,000 in each of those years (in each case including foreign income, tax exempt income and full amount of capital gains and losses but excluding any income of other family members and any unrealized capital appreciation) and has a reasonable expectation of reaching the same income level in the current year;

      c.  The undersigned is a director or executive officer of the Company, which is issuing and selling the Securities;

      d.  The undersigned is a corporation, partnership, business trust, or non-profit organization within the meaning of Section 501(c)(3) of the Internal Revenue Code, in each case not formed for the specific purpose of acquiring the Securities and with total assets in excess of $5,000,000; (describe entity):

      _____

      _____

      _____

      e.  The undersigned is a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Securities, where the purchase is directed by a "sophisticated person" as defined in Regulation 506(b)(2)(ii);

f.   The undersigned is an entity all the equity owners of which are "Accredited Investors" within one or more of the above categories.  If relying upon this Category alone, each equity owner must complete a separate copy of this Agreement: (describe entity)

_____   _____

B.   The undersigned is **not** an "Accredited Investor."  However, the undersigned represents and warrants the following:

The undersigned is an individual whose individual net worth, or joint net worth with his or her spouse, if applicable, is approximately $ _2 MILLION_

The undersigned had an income of approximately $ _150K_ in 2018, and has **2019** a reasonable expectation of earning an annual income of approximately $ _150K_ in the current year.

2.   **Entity Type.**  The undersigned is (circle only one):

A - An individual

B - A corporation

C - A partnership

(D) - A trust

E - Other

3.   **Tax I.D. Number.**  The social security number of federal tax ID number of the undersigned is:

_____   ████████████████

4.   **Address.**  The address of the undersigned is:

████████████████████████
████████████████████████

_____

The phone, fax and contact person (if an entity) are as follows:

Phone: _____ ████████████████

Fax: _____

Email: _____

Contact: _____

5.  **Investment Intent.** By the execution of this questionnaire, the undersigned represents to the Company that the undersigned: (a) understands that the offering of the Securities has not been and will not be registered under the Securities Act of 1933, as amended, or state securities laws, by reason of claimed exemptions under the provisions of such laws which depend, in part, upon the undersigned's investment intention, (b) is purchasing or would purchase the Securities for the undersigned's own account for investment and not with a view toward the resale or distribution to others, and (c) was not formed for the specific purpose of purchasing securities of the Company.

The foregoing representation is true and accurate as of the date hereof and shall be true and accurate as of the date of Closing.  If in any respect such representation shall not be true and accurate prior to Closing, the undersigned shall give immediate notice of such fact to the management of the Company.

Dated: ___1 | 30 | 20___

Very truly yours,

STEVEN J RUBINSTEIN

Print name of Investor: _____

TRACEY F. RUBINSTEIN

Print Name of Joint Investor:

Signature: X _____

Signature: X _____

Print Title (if applicable): _TRUSTEE_

Print Title (if applicable): _TRUSTEE_

## EXHIBIT A

**Rule 501.** **Definitions and Terms Used in Regulation D.**

As used in Regulation D, the following terms have the meaning indicated:

**Accredited Investor.** "Accredited Investor" shall mean any person who comes within any of the following categories, at the time of the sale of the securities to that person:

1. Any bank as defined in section 3(a)(2) of the Act or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; insurance company as defined in Section 2(13) of the Act; investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of the Act; Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301 (c) or (d) of the Small Business Investment Act of 1958; employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000; or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

2. Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

3. Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

4. Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of the issuer;

5. Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

6. Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7. Any trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii); and

8. Any entity in which all of the equity owners are accredited investors.

# SUBSCRIPTION AGREEMENT

# FOR

# EQUIALT FUND II, LLC

## A Nevada limited liability company

THIS SUBSCRIPTION AGREEMENT (the "Agreement") is made by and among EquiAlt Fund II, LLC, a Nevada limited liability company (the "Company"), and the individuals and/or entities purchasing the securities hereunder (individually, a "Subscriber" and collectively, the Subscribers").

WHEREAS, the Company desires to issue up to a maximum of Fifty Million (50,000,000) units of Class A membership interest (the "Maximum Offering") to certain Accredited Investors, as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (the "Act")

WHEREAS, each Subscriber has been furnished with an executive summary of this offering, a copy of the Company's operating agreement, an accredited investor questionnaire, this Agreement and the Risk Factors incorporated into the Agreement, as such may have been amended or supplemented from time to time (collectively, the "Offering Documents"); and

WHEREAS, the Subscriber desires to purchase that number of units set forth on the signature page hereof on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual representations and covenants set forth herein, the parties agree as follows:

1. Purchase and Sale of Units.

   1.1. Purchase of Units. Subject to the terms and conditions of this Agreement, the Subscribers agree to purchase at the Closings that number of units up to an aggregate of Fifty Million (50,000,000) units of Class A membership interest at a purchase price of Ten Dollars ($10.00) per unit, as may be subscribed to by the Subscribers in this offering. The Units issued to the Subscribers pursuant to this Agreement (including counterpart versions hereof) shall be referred to herein as the "Units".

   1.2. Company reservation of Rights to Terminate or Deny. The Company reserves the right to refuse all or part of any or all subscriptions. Furthermore, no Subscription Agreement shall be effective until accepted and executed by the Company and the Company shall have the right, in its sole discretion, for any reason or for no reason, to refuse any potential Subscribers.

2. Closing and Delivery.

   2.1. Initial Closing Date. The initial purchase and sale of the Units shall take place at such time and place as the Company determines (the "Initial Closing"). At the Initial Closing, the Company shall deliver to each Subscriber a certificate representing the Units to be purchased in the Closing by the Subscriber. The purchase price for the Units is payable by check or wire transfer payable to the Company or its designee in an amount equal to the applicable purchase

price per unit multiplied by the number of Units being purchased by such Subscriber. Each Subscriber hereby authorizes and directs the Company to deliver the Units to be issued to the Subscriber pursuant to this Agreement directly to the Subscriber at the residential or business address indicated on the signature page hereto.

2.2. <u>Subsequent Closings.</u> The Company may conduct subsequent closings on an interim basis (each referred to as a "Closing"), until the Maximum Offering amount has been reached (subject to increase in the event of oversubscription of the offering). All such sales shall be made on the terms and conditions set forth in this Agreement. Any Units sold pursuant to this Section 2.2 shall be deemed to be "Units" and any Subscribers thereof shall be deemed to be "Subscribers" for all purposes under this Agreement.

3. <u>Representations and Warranties of the Company.</u> The Company hereby represents and warrants to the Subscribers that:

3.1. <u>Organization, Good Standing and Qualification.</u> The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Nevada and has all requisite corporate power and authority to carry on its business as now conducted and as proposed to be conducted. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify would have a material adverse effect on its business or properties.

3.2. <u>Authorization.</u> All action on the part of the Company, and its managers, necessary for the authorization, execution and delivery of this Agreement and the issuance of the Units, the performance of all obligations of the Company hereunder and there under has been taken or will be taken prior to the Closing, and this Agreement constitutes a valid and legally binding obligation of the Company, enforceable in accordance with its terms.

3.3. <u>Valid Issuance of Units.</u> (A) The Units, when issued, sold and delivered in accordance with the terms hereof for the consideration expressed herein or therein, will be duly and validly issued and fully-paid and non-assessable. Based in part upon the representations of the Subscribers in this Agreement and subject to the completion of the filings referenced below, the Units will be issued in compliance with all applicable federal and state securities laws. (B) The Units, are or as of the Initial Closing will be, duly and validly authorized and issued, fully-paid, and were or will be issued in compliance with all applicable federal and state laws.

3.4. <u>Governmental Consents.</u> No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local government authority on the part of the Company is required in connection with the consummation of the transactions contemplated by this Agreement, except for the Federal and State Securities Law Filings to be made by the Company as necessary.

3.5. <u>Litigation.</u> There is no action, suit, proceeding or investigation pending or currently threatened against the Company that questions the validity of the Agreement, or the right of the Company to enter into this Agreement, or to consummate the transactions contemplated hereby, or that might result,

either individually or in the aggregate, in any material adverse changes in the assets, condition, affairs or prospects of the Company, financially or otherwise, or any change in the current equity ownership of the Company, nor is the Company aware that there is any basis for the foregoing. The Company is not a party or subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality. There is no action, suit, proceeding or investigation by the Company currently pending or which the Company intends to initiate.

3.6. <u>Compliance with Other Instruments.</u> The Company is not in violation or default of any provisions of its Articles of Organization or Operating Agreement or of any instrument, judgment, order, writ, decree or contract to which it is a party or by which it is bound or, to its knowledge, of any provision of federal or state statute, rule or regulation applicable to the Company. The execution, delivery and performance of the Agreement, and the consummation of the transactions contemplated hereby, will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree or contract or an event which results in the creation of any lien, charge or encumbrance upon any assets of the Company.

3.7. <u>Disclosure.</u> The forward-looking statements, including financial projections, contained in the Offering Documents were prepared in good faith; however, the Company does not warrant that such statements will ultimately become true. In addition to the foregoing, the Company restates as if rewritten herein the Risk Factors attached hereto as Schedule I as if fully rewritten herein and the following: (A) <u>No Independent Studies</u>. The determination of the Company's capital requirements and the intended use of proceeds from this Offering is based solely upon information developed by the Company. No independent studies with regard to feasibility, management, or marketing have been conducted by any third parties in determining the Company's capital requirements or requirements. (B) <u>Structure of the Offering</u>. The Units are being sold through the Company without commissions. The Offering is being conducted on a "best efforts" basis.


4. <u>Representations and Warranties of the Subscribers.</u> Each Subscriber hereby severally and not jointly represents and warrants to the Company that:

4.1. <u>Risk.</u> The Subscriber recognizes that the purchase of the Units involves a high degree of risk in that (i) the Company has limited operation history; (ii) an investment in the Company is highly speculative, and only investors who can afford the loss of their entire investment should consider investing in the Company and the Units; (iii) the Subscriber may not be able to liquidate his, her or its investment; and (iv) transferability of the Units is extremely limited.

4.2. <u>Accredited Investor.</u> The Subscriber represents that the Subscriber is an officer, director or equivalent of the Company, and /or is an "Accredited Investor," as such term is defined in Rule 501 of Regulation D promulgated under the Act, and that the Subscriber is able to bear the economic risk of an investment in the Units.

4.3. <u>Investment Experience.</u>  The Subscriber hereby acknowledges and represents that the Subscriber has prior investment experience, including investment in non-listed and unregistered securities, or the Subscriber has employed the services of an investment advisor, attorney and/or accountant ro read all of the documents furnished or made available by the Company both to the Subscriber and to all other prospective investors in the Units and to evaluate the merits and risks of such an investment on the Subscriber's behalf.

4.4. <u>Due Diligence.</u>  The Subscriber hereby acknowledges receipt and careful review of the Offering Documents, as supplemented and amended, and the attachments and exhibits thereto all of which constitute an integral part of the Offering Documents, and hereby represents that the Subscriber has been furnished by the Company during the course of this transaction with all information regarding the Company which the Subscriber has requested or desired to know, has been afforded the opportunity to ask questions of and receive answers from duly authorized managers, officers or other representatives of the Company concerning the terms and conditions of the offering and has received an additional information which Subscriber has requested.

4.5. <u>Protection of Interests; Exempt Offering.</u>  The Subscriber hereby represents that the Subscriber either by reason of the Subscriber's business or financial experience or the business or financial experience of the Subscriber's professional advisors (who are unaffiliated with and who are not compensated by the Company or any affiliate of the Company, directly or indirectly) has the capacity to protect the Subscriber's own interests in connection with the transaction contemplated hereby.  The Subscriber hereby acknowledges that the offering has not been reviewed by the United States Securities and Exchange Commission (the "SEC") because of the Company's representations that this is intended to be exempt from the registration requirements of Section 5 of the Act.  The Subscriber agrees that the Subscriber will not sell or otherwise transfer the Units unless they are registered under the Act or unless an exemption from such registration is available.

4.6. <u>Investment Intent.</u>  The Subscriber understands that the Units have not been registered under the Act by reason of a claimed exemption under the provisions of the Act which depends, in part, upon the Subscriber's investment intention.  In this connection, the Subscriber hereby represents that the Subscriber is purchasing the Units for the Subscriber's own account for investment and not with a view toward the resale or distribution to others.  The Subscriber, if an entity, was not formed for the purpose of purchasing the Units.

4.7. <u>Restricted Securities.</u>  The Subscriber understands that there currently is no public market for any of the Units and that even if there were, Rule 144 promulgated under the Act requires, among other conditions, a one-year holding period prior to the resale (in limited amounts) of securities acquired in a non-public offering without having to satisfy the registration requirements under the Act.  The Subscriber understands and hereby acknowledges that the Company I under no obligation to register the Units under the Act or any state securities or "blue sky" laws.  The Subscriber consents that the Company may, if it desires, permit the transfer of the Units out of the Subscriber's name only when the Subscriber's request for transfer is accompanied by an opinion of counsel reasonably satisfactory to the Company that neither the sale nor the

proposed transfer results in a violation of the Act or any applicable state "blue sky" laws (collectively, the "Securities Laws"). The Subscriber agrees to hold the Company and is members, manager, officers, employees, controlling persons and agents and their respective heirs, representatives, successors and assigns harmless and to indemnify them against all liabilities, cost and expenses incurred by them as a result of any misrepresentation made by the Subscriber contained in this Agreement or any sale or distribution by the Subscriber in violation of the Securities Laws. The Subscriber understands and agrees that in addition to restrictions on transfer imposed by applicable Securities Laws, the transfer of the Units will be restricted by the terms of this Agreement.

4.8. <u>Legends.</u> The Subscriber consents to the placement of a legend on any certificate or other document evidencing the Units that such Units have not been registered under the Act or any state securities or "blue sky" laws and setting forth or referring to the restrictions on transferability and sale thereof contained in the Agreement. The Subscriber is aware that the Company will make a notation in its appropriate records with respect to the restrictions on the transferability of such Units and may place additional legends to such effect on Subscriber's unit certificate(s).

4.9. <u>Rejection.</u> The Subscriber understands that the Company will review this Agreement and that the Company reserves the unrestricted right to reject or limit any subscription and to close the offering to the Subscriber at any time.

4.10. <u>Address.</u> The Subscriber hereby represents that the address of the Subscriber furnished by the Subscriber on the signature page hereof is the Subscriber's principal residence.

4.11. <u>Authority.</u> The Subscriber represents that he or she has full power and authority to execute and deliver this Agreement and to purchase the Units. This Agreement constitutes the legal, valid and binding obligation of the Subscriber, enforceable against the Subscriber in accordance with its terms.

5. <u>Limitations on Transfer.</u>

5.1. <u>Company Right of First Refusal.</u> The Subscribers shall not assign, encumber or dispose of any interest in any of the Units except in compliance with applicable state and federal laws.

6. <u>Miscellaneous.</u>

6.1. <u>Survival of Representations and Warranties.</u> The warranties, representations and covenants of the Company contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing for a period of one (1) year following the last Closing.

6.2. <u>Governing Law.</u> NOTWITHSTANDING THE PLACE WHERE THIS AGREEMENT MAY BE EXECUTED BY ANY OF THE PARTIES HERETO, THE PARTIES EXPRESSLY AGREE THAT ALL THE TERMS AND PROVISIONS HEREOF SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

6.3. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.4. <u>Titles and Subtitles</u>. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

6.5. <u>Notices</u>. (A) All notices, request, demand and other communications under this Agreement or in connection herewith shall be given to or made upon the respective parties as follows: if to the Subscribers, to the addresses set forth on the signature page hereto, or, if to the Company, to EquiAlt Fund, LLC, c/o Duane Morris LLP, Attn: Paul R. Wassgren, 100 N. City Parkway, Suite 1560, Las Vegas, Nevada 89106.                (B) All notices, requests, demands and other communications given or made in accordance with the provisions of the Agreement shall be in writing, and shall be sent by certified or registered, return receipt requested, or by overnight courier or telecopy (facsimile) with confirmation of receipt, and shall be deemed to be given or made when receipt is so confirmed.
(C) Any party may, by written notice to the other, alter its address or respondent and such notice shall be considered to have been given ten (10) days after the airmailing, telexing or telecopying thereof.

6.6. <u>Brokers</u>. (A) Each Subscriber severally represents and warrants that it has not engaged, consented to or authorized any broker, finder or intermediary to act on its behalf, directly or indirectly, as a broker, finder or intermediary in connection with the transactions contemplated by this Agreement. Each Subscriber hereby severally agrees to indemnify and hold harmless the Company from and against all fees, commissions or other payments owing to any such person or firm acting on behalf of such Subscriber hereunder. The Company will pay finder's fees only in compliance with applicable law.      (B) The Company agrees to indemnify and hold harmless the Subscribers from and against all fees, commissions or other payment owing by the Company to any other person or firm acting on behalf of the Company hereunder.

6.7. <u>Expenses</u>. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

6.8. <u>Third Parties</u>. Nothing in the Agreement shall create or be deemed to create any rights in any person or entity not a party to this Agreement.

6.9. <u>Amendments and Waivers</u>. Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and Subscribers holding a majority in interest of the Units purchased in the offering.

6.10. <u>Severability</u>. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

6.11. <u>Entire Agreement</u>.  This Agreement and the other Offering Documents constitute the entire agreement between the parties hereto pertaining to the subject matter herof, and any and all other written or oral agreements existing between the parties hereto are expressly canceled.

*(Signature page follows.)*

This Subscription Agreement has been executed as of the date last set forth below.

NUMBER OF UNITS: _____ *7500*

$10.00 PER UNIT

FOR THE AGGREGATE PURCHASE PRICE: $_____ *75,000*

**SUBSCRIBER:**

Print or Type Name of Subscriber: _____ *THE RUBINSTEIN FAMILY LIVING TRUST*

Signature: _____  Second Signature if Jointly: _____ *Tracy J. Rubinstein* *6/25/11*

Title of Signatory: _____

If jointly subscribed manner in which Title to be held:

_____

Address:_____ ███████████████

Telephone: _____

Facsimile: _____

Tax I.D. #: _____ ████████

Dated: _____ *1/30/20*

This Subscription Agreement is agreed to and accepted as of  1/31/20

          **EQUIALT FUND II, LLC**

          **a Nevada limited liability company**

By:     EquiAlt Fund II, LLC

        a Nevada limited liability company

        its Manager

        By:

        EquiAlt Fund II, its Manager



**Beneficiary Information:** The following individual(s) or entity(ies) shall be my primary and/or contingent beneficiary(ies) of this account. If neither primary nor contingent is indicated, the individual or entity will be deemed to be a primary beneficiary. If more  than one primary beneficiary is designated and no distribution percentages are indicated, the beneficiaries will be deemed to own equal share percentages. Multiple contingent beneficiaries with no share percentages indicated will also be deemed  to share equally. If any primary or contingent beneficiary dies before I do, his or her interest and the interest of his or her heirs shall terminate completely, and the percentage share of any remaining beneficiary(ies) shall be increased on a pro rata basis. If no primary beneficiary(ies) survives me, the contingent beneficiary(ies) shall acquire the designated share of the account.

**Beneficiary Information**
Name: THE RUBINSTEIN FAMILY LIVING TRUST
Address: 6/25/10
City:          State:     Zip:
Share %: 100          Relationship: TRUST
What type of Beneficiary is this?  Primary

**Beneficiary 2**
First Name:          Last Name:
Address:
City:               State:     Zip:
Share %:          Relationship:
What type of Beneficiary is this?

**Beneficiary 3**
First Name:          Last Name:
Address:
City:               State:     Zip:
Share %:          Relationship:
What type of Beneficiary is this?



## Direct Deposit Agreement Form

### Authorization Agreement

I hereby authorize EquiAlt to initiate automatic deposits to my account at the financial institution named below. I also authorize EquiAlt to make withdrawals from this account in the event that a credit entry is made in error.

Further, I agree not to hold EquiAlt responsible for any delay or loss of funds due to incorrect or incomplete information supplied by me or by my financial institution or due to an error on the part of my financial institution in depositing funds to my account.

This agreement will remain in effect until EquiAlt receives a written notice of cancellation from me or my financial institution, or until I submit a new direct deposit form to the Payroll Department.

### Account Information

| | |
|---|---|
| Name of Financial Institution: | ███████████████████ |
| Routing Number: | |
| Account Number: | ☒ Checking \| ☐ Savings |

### Signature

| | | | |
|---|---|---|---|
| Authorized Signature (Primary): | X _[signature]_ | Date: | 1/30/20 |
| Authorized Signature (Joint): | X Tracy Rubinstein | Date: | 1/30/20 |

**Please attach a voided check or deposit slip and return this form to the Payroll Department.**

## CERTIFICATE OF TRUST EXISTENCE AND AUTHORITY

THIS AGREEMENT is made and entered into on ___*June 25, 2010*___, between **STEVEN J. RUBINSTEIN** and **TRACEY F. RUBINSTEIN**, of the County of **MARICOPA**, State of **ARIZONA**, herein designated as Co-Trustors; and **STEVEN J. RUBINSTEIN** and **TRACEY F. RUBINSTEIN**, of the County of **MARICOPA**, State of **ARIZONA**, herein designated as Co-Trustees. The name of the trust is **THE RUBINSTEIN FAMILY LIVING TRUST**, **DATED** ___*June 25, 2010*___.

**IT IS AGREED BETWEEN THE PARTIES HERETO AS FOLLOWS:**

**1.   Description of Trust:**   The parties hereto desire to confirm the establishment of a revocable trust on the date first above written, and amendments thereto, for the benefit of Co-Trustors (as husband and wife) and containing, among others, the following provisions:

**2.   Initial Co-Trustees:**   The husband and wife are designated as Co-Trustees, to serve until the death, resignation or incompetence of one of them, and the remaining Co-Trustee shall continue to act as sole Trustee.

**3.   Additions to Trust Estate.**   Additional property may be added to the trust estate at any time by the Co-Trustors or either of them, or by any person or persons, by inter vivos or testamentary transfer.

**4.   Successor Trustees:**   Upon removal of both husband and wife as Co-Trustees, the successor Co-Trustees are designated as **BRADLEY R. RUBINSTEIN** and **CURT W. RUBINSTEIN**.   Thereafter, should a Co-Trustee die, resign, or become incapacitated, the remaining Co-Trustee shall continue to serve as sole Trustee.

**5.   Power to Alter Succession of Trustees:**   After the death of either Co-Trustor, the surviving Co-Trustor shall have full power and authority to alter the succession of trustees by written Designation of Successor Trustee(s) filed with the then acting Trustee.

**6.   Revocable and Irrevocable Provisions:**   Upon the death of the first Co-Trustor, hereinafter called the "Deceased Spouse," the then surviving Co-Trustor, hereinafter called the "Surviving Spouse," shall have the power to amend, revoke and/or terminate the **SURVIVOR TRUST only.**   If a **DISCLAIMER TRUST** is established, the terms of the DISCLAIMER TRUST **may not be amended, revoked or terminated.** On revocation of the SURVIVOR TRUST, all of its assets shall be delivered to the Surviving Spouse. Revocation and amendment shall be made by written instrument filed with the Trustee.

IN WITNESS WHEREOF, the parties hereto have executed this CERTIFICATE OF TRUST EXISTENCE AND AUTHORITY the day and year first above written.

CO-TRUSTORS:                          CO-TRUSTEES:


_____              _____
STEVEN J. RUBINSTEIN                  STEVEN J. RUBINSTEIN


_____              _____
TRACEY F. RUBINSTEIN                  TRACEY F. RUBINSTEIN


STATE OF ARIZONA        )
                        ) ss.
COUNTY OF MARICOPA      )

On _____, before me, the undersigned, a Notary Public in and for said County and State, personally appeared **STEVEN J. RUBINSTEIN** and **TRACEY F. RUBINSTEIN**, known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same.

WITNESS my hand and official seal               My Commission Expires: _____


_____
Notary Public

ROBERT U. HOUTS
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
Commission Expires March 8, 2012



## Debenture Modification Request

Every investor has a fixed contract with the entity they are invested in called a Debenture. If for any reason an investor wishes to change any of the terms of the Debenture a request for this change must be followed. A change to the debenture includes such events as; request for partial or full return of investment prior to maturity or a change in term status (i.e. Monthly, Quarterly, Semi-Annual, Annual, or Growth).

Procedure:

If a customer wishes to modify, amend or change the terms to the initial investment the procedure is as follows;

1. Customer is to complete the Request to Amend form.
2. EquiAlt Management will review all requests submitted in the first week of the month if they are submitted completely by the first of the month.
3. EquiAlt Management will communicate the approval or denial of the request by the 15th of the corresponding month.
4. Investment type change requests can take up to 90 Days to be processed.
5. Early redemption requests are processed quarterly. If approved, the redemption process will begin in the 2nd quarter from the quarter in which the request was made:

The decision will be based on various business related factors at that time and order in which requests are made.

Every approved request will have attached the following features:

1. A best efforts timeline for the change of the debenture,
2. For early redemptions a 10% surrender fee charge based on the amount requested for the approved modification. The charge will be taken at the time of the approved request.
3. For investment type changes from growth to income a one time fee of $1,000.00 will apply. The charge will be taken at the time of the approved request.

Debenture Information needed to process the request:

1. Date of initial investment,
2. Entity invested,
3. Trust Company Used,
4. Investor Relations contact,
5. Amount of initial investment,
6. Amount of request,
7. Amount of remaining investment (if any),
8. Terms of the remaining Investment (if any).

Once all this is received, the request will be submitted for the next months evaluation on the availability of the entity to reasonably satisfy the request.

Signature _Tracey J. Rubinstein_ Date _1/30/20_

Name_ STEVEN J RUBINSTEIN
TRACEY F RUBINSTEIN