# Exhibit E

January 30, 2018


Georgia F. Murphy

████████████████


Dear Mr. Rybicki:

Hello and thank you for the opportunity to invest in the Equialt Fund, LLC. In conjunction with
the REIT offering I am respectfully requesting to liquidate $100,000.00 of my initial
$250,000.00 investment leaving $150,000.00 for the Equialt REIT. It is my understanding from
Robert (Bobby) Armijo, my Financial Advisor, that the liquidation could take upwards
of 30 days.


Thank you, and I look forward to celebrating your success!


Very Sincerely,

*[signature]*

Georgia F. Murphy



## TRANSFER of FUNDS

I, _____ Georgia Murphy _____, instruct with this document

dated _1/30/2018_____ to transfer my investment in the amount of

$_150,000.00_____ from EquiAlt Fund, LLC to EquiAlt Secured Income Portfolio
REIT, INC.

Signed and mutually agreed by:

_____

Barry M. Rybicki

EquiAlt Fund LLC

_____
Georgia Murphy

# Investor Instructions
## *Private Placement Offering*



*Please follow these instructions carefully. Failure to do so could result in the rejection of your subscription.*

## 1. SUBSCRIPTION AMOUNT

**PLEASE NOTE: Money Orders, Traveler's Checks, Starter Checks, Foreign Checks, Counter Checks, Third-Party Checks and Cash <u>cannot</u> be accepted.**

A minimum initial investment of $25,000 is required; provided, however, qualified accounts (as defined below) must initially invest at least $5,000 in our shares to be eligible to participate in this offering. In our sole discretion, we may permit certain investors to make a smaller investment in our shares. Until we have raised the minimum amount necessary to sell shares in this offering (as described in the Confidential Private Placement Memorandum of EquiAlt Secured Income Portfolio REIT, Inc., as amended and supplemented as of the date hereof (the "PPM")), you should make your check payable to **"UMB Bank, N.A., as escrow agent for EquiAlt Secured Income Portfolio REIT, Inc."** Once we have raised the minimum amount, you should make your check payable to "EquiAlt Secured Income Portfolio REIT, Inc."

A qualified account includes an account established for (i) an "employee pension benefit plan" within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and subject to the requirements of Title I of ERISA, (ii) an "individual retirement account" within the meaning of section 408(a) of the Code and/or a "Plan" within the meaning of section 4975(e)(1) of the Code or (iii) a "governmental plan" within the meaning of section 3(32) of ERISA.

We have placed limitations on the participation of Benefit Plan Investors (as defined in the PPM) in the offering. Benefit Plan Investors should refer to the disclosure in the PPM under "ERISA Considerations – Plan Asset Considerations" for additional information. Benefit Plan Investors should also follow the escrow instructions in the PPM under "Plan of Distribution – Special Notice to Benefit Plan Investors."

The maximum number of shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc. (the "Company") will be purchased based on the amount set forth under "Amount of Subscription" and will vary depending on whether the sale is subject to any available discounts. If you provide payment that differs from the payment amount indicated in "Amount of Subscription," your subscription will be automatically deemed a subscription for the maximum number of shares that may be purchased for the payment provided.

## 2. ACCOUNT TYPE

Please check the appropriate box to indicate the account type of the subscription. Please note that pension plans, profit sharing plans, KEOGH plans, 401Ks, traditional (individual) Individual Retirement Accounts ("IRAs"), simple IRAs, SEP IRAs, ROTH IRAs, and Beneficial IRAs are considered to be Benefit Plans (as defined in the PPM) and as such, investments to be held in such accounts are subject to certain limitations and escrow terms as described in the PPM. See "ERISA Considerations - Plan Asset Considerations" and "Plan of Distribution - Special Notice to Benefit Plan Investors" in the PPM. **Benefit Plans may only subscribe for shares through a Broker-Dealer or a Registered Investment Advisor.**

Please be aware that the Company, EquiAlt Capital Advisors LLC (the "Advisor"), EquiAlt Holdings LLC and their respective officers, directors, employees and affiliates are not undertaking to provide impartial investment advice or to give advice in a fiduciary capacity in connection with the Company's private offering or the purchase of the Company's common stock and that the Advisor has financial interests associated with the purchase of the Company's common stock, as described in the PPM, including fees, expense reimbursements and other payments it anticipates receiving from the Company in connection with the purchase of the Company's common stock.

## 3. ACCOUNT INFORMATION

Enter the name(s), mailing address and telephone numbers of the registered owner of the investment. Partnerships, corporations and other organizations should include the name of an individual to whom correspondence should be addressed. Non-resident aliens must also supply IRS Form W-8BEN.

All investors must complete the space provided for taxpayer identification number or social security number. By signing in Section 8, you are certifying that the number you have provided in the Subscription Agreement is correct.

Please print the exact name(s) in which shares are to be registered. Include the trust/entity name, if applicable. If the account is an IRA or custodial held account, include the names and taxpayer identification numbers of both the investor and the custodian or administrator.

You may elect to have your account documents, such as investor and proxy statements, tax forms, annual reports and other investor communications made available to you electronically, by signing in this section. If you elect this option, you: (i) must provide a valid e-mail address in Section 3 of the Subscription Agreement; (ii) agree that you have the appropriate hardware and software to receive e-mail notifications and view PDF documents; (iii) understand you may incur certain costs associated with downloading and printing investor documents; and (iv) understand that electronic delivery also involves risks related to system or network outages that could impair your timely receipt of or access to your documents. EquiAlt Secured Income Portfolio REIT, Inc. may choose to send one or more items to you in paper form despite your consent to electronic delivery. You may also request a paper copy of any particular investor document. Your consent will be effective until you revoke it by either written consent to EquiAlt Secured Income Portfolio REIT, Inc. or by contacting EquiAlt Secured Income Portfolio REIT, Inc. at (855) EquiAlt.

**PLEASE NOTE: You must include a permanent street address even if your mailing address is a P.O. Box. If the investment is to be held by joint owners, you must provide the requested investor information for each joint owner.**

**If you subscribe for shares in this private offering, you will grant an irrevocable authorization for our advisor to be your proxy at a meeting of our stockholders with permission to vote your shares on any proposal put to a stockholder vote that our board of directors believes is necessary to comply with any state or federal rule, law or regulation or to comply with any request made by a state or federal administrative body in connection with the registration of an initial public offering of shares of our common stock.**

### 4. CUSTODIAN/THIRD PARTY ADMINISTRATOR INFORMATION

Complete this section if the registered owner of the investment will be a Custodian Plan. The Custodian/Administrator of the plan must also complete section 7 and sign page six of the Subscription Agreement.

### 5. DISTRIBUTION INFORMATION

Complete this section to elect to receive distributions by direct deposit and/or to elect to receive distributions by check. If you elect direct deposit into your checking or savings account (not available for brokerage accounts), you must attach a voided check with this completed Subscription Agreement. You must indicate the percentage of your distribution to be applied to each option selected and the sum of the allocations must equal 100%. If you do not complete this section, distributions will be paid to the registered owner at the address in Section 3, or for custodial held accounts, to the address listed in Section 4 of the Subscription Agreement. Custodial account distributions to a third party require custodian approval.

### 6. BROKER-DEALER AND REGISTERED REPRESENTATIVE INFORMATION

**PLEASE NOTE: If applicable, the Broker-Dealer or Registered Investment Adviser must complete this section of the Subscription Agreement. To subscribe through a Broker-Dealer, a Selected Dealer Agreement must be executed with the Company to be listed as agent/firm of record.**

### 7. ACCREDITED INVESTOR STATUS

Shares are being sold only to certain classes of qualified investors. To become an investor, you must attest that you are an "accredited investor," as that term is defined from time to time in Regulation D as promulgated by the SEC under the Securities Act of 1933, as amended (the "Securities Act"). Please check all representations that apply.

### 8. SUBSCRIBER SIGNATURES

Please separately initial each of the representations in paragraphs (a) through (l). Except in the case of fiduciary accounts, you may not grant any person a power of attorney to make such representations on your behalf.

Please refer to the PPM under "Investor Suitability Standards" to verify that you meet the minimum suitability standards to invest in this offering.

By signing this Subscription Agreement, you agree to provide the information in Section 7 and 8 of the agreement and confirm the information is true and correct. If we are unable to verify your identity or that of another person authorized to act on your behalf or if we believe we have identified **potential criminal activity**, we reserve the right to take action as we deem appropriate, including, but not limited to, closing your account or refusing to establish your account.

### 9. FINANCIAL REPRESENTATIVE SIGNATURES

**PLEASE NOTE: If applicable, the Broker-Dealer or Registered Investment Advisor must sign this section to complete the subscription.**

**Required Representations: By signing Section 9, the registered representative of the Broker-Dealer or Registered Investment Advisor confirms on behalf of the Broker-Dealer that he or she:**

- has reasonable grounds to believe that the investor is an "accredited investor" as the term is defined in Section 501(a) of Regulation D and meets the investor suitability requirements set forth in the PPM;
- has reasonable grounds to believe the information and representations concerning the investor identified herein are true, correct and complete in all respects;
- has discussed the investor's prospective purchase of shares with such investor and believes the investor can reasonably benefit from an investment in the shares of the common stock of EquiAlt Secured Income Portfolio REIT, Inc. based on such investor's overall investment objectives and portfolio structure;
- has advised such investor of all pertinent facts with regard to the lack of liquidity and marketability of the shares and other fundamental risks related to the investment in the shares, the restrictions on transfer of the shares and the risk that the investor could lose his or her entire investment in the shares;
- has delivered to the investor the PPM required to be delivered in connection with this subscription;
- has reasonable grounds to believe the investor is purchasing these shares for the account referenced in Section 3; and
- has reasonable grounds to believe the purchase of shares is a suitable investment for such investor, and such investor is in a financial position to enable the investor to realize the benefits of such an investment and to suffer any loss that may occur with respect thereto.

**In addition, the registered representative of the Broker-Dealer or Registered Investment Advisor represents that he or she and the Broker-Dealer and/or Registered Investment Advisor:**

- are duly licensed and may lawfully offer and sell the shares in the state where the investment was made and in the state designated as the investor's legal residence in Section 3; and
- agree to maintain records of (i) the information used to determine that an investment in shares is suitable and appropriate for the investor for a period of 6 years, and (ii) the documents used to establish a pre-existing relationship between the financial advisor and the Investor.

**To the extent the investor identified in the Subscription Agreement is a plan, plan fiduciary, plan participant or beneficiary, IRA, or IRA owner subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), the registered representative of the Broker-Dealer or Registered Investment Advisor further represents that: (i) there is no financial interest, ownership interest, or other relationship, agreement, or understanding that would limit his or her ability to carry out his or her fiduciary responsibility to such investor beyond the control, direction, or influence of other persons involved in such investor's purchase of shares; (ii) he or she is capable of evaluating investment risk independently, both in general and with regard to particular transactions and investment strategies; and (iii) he or she is a fiduciary under ERISA or the Code, or both, with respect to such investor's purchase of shares, and he or she is responsible for exercising independent judgment in evaluating such investor's purchase of shares.**

**The registered representative of the Broker-Dealer or Registered Investment Advisor also represents that he or she is not or has not been subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) of the Securities Act, i.e. that he or she is not and has not been:**

- Convicted, within ten years of the date hereof (the "Effective Date"), of any felony or misdemeanor that was:
  - ▶ In connection with the purchase or sale of any security;
  - ▶ Involving or making of any false filing with the Securities and Exchange Commission (the "SEC"); or
  - ▶ Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment advisor or paid solicitor of purchasers of securities.
- Subject to any order, judgment or decree of any court of competent jurisdiction, entered within 5 years before the Effective Date, that restrains or enjoins such person from engaging or continuing in any conduct or practice:
  - ▶ In connection with the purchase or sale of any security;
  - ▶ Involving the making of any false filing with the SEC; or
  - ▶ Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment advisor or paid solicitor of purchasers of securities.
- Subject to a final order of a state securities commission (or an agency or officer of a state performing like functions), a state authority that supervises or examines banks, savings associations or credit unions, a state insurance commission (or an agency or officer of a state performing like functions), an appropriate federal banking agency, the U.S. Commodity Futures Trading Commission or the National Credit Union Administration that:
  - ▶ As of the Effective Date, bars the person from:
    - o Association with an entity regulated by such commission, authority, agency or officer;
    - o Engaging in the business of securities, insurance, or banking; or
    - o Engaging in savings association or credit union activities.
  - ▶ Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative or deceptive conduct entered within 10 years before the Effective Date.

- Subject to an order of the SEC pursuant to Sections 15(b) or 15B(c) of the Exchange Act of 1934, as amended (the "Exchange Act"), or Section 203(e) or (f) of the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act"), that, at the time of such sale:
  - ► Suspends or revokes such person's registration as a broker, dealer, municipal securities dealer or investment advisor;
  - ► Places limitations on the activities, functions or operations of such person; or
  - ► Bars such person from being associated with any entity or from participating in the offering of any penny stock.

- Subject to any order of the SEC entered within 5 years before the Effective Date, as of the date hereof, that orders the person to cease and desist from committing or causing a violation or future violation of:
  - ► Any scienter-based anti-fraud provisions of the federal securities laws, including, without limitation, Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and 17 CFR 240.10b-5, Section 15(c)(1) of the Exchange Act and Section 206(1) of the Investment Advisers Act, or any other rule or regulation thereunder; or
  - ► Section 5 of the Securities Act.

- Suspended or expelled from membership in, or suspended or barred from association with, a member of a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade.

- Filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the SEC that, within 5 years of the Effective Date, was the subject of a refusal order, stop order or order suspending the Regulation A exemption or, is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued.

- Subject to a United States Postal Service false representation order entered within 5 years before the Effective Date, or is, at the Effective Date, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

**Until we have raised the minimum amount:** (see Section 1) You should make your check payable to "UMB Bank, N.A., as escrow agent for EquiAlt Secured Income Portfolio REIT, Inc." Payment and Subscription Agreement should be delivered by your Broker-Dealer or Registered Investment Advisor, as applicable, to UMB Bank, N.A., as Escrow Agent for EquiAlt Secured Income Portfolio REIT, Inc. at the UMB Bank, N.A. address listed below.

**Once we have raised the minimum amount:** Unless the investment is for the account of a Benefit Plan Investor, once the applicable minimum amount has been raised (see Section 1), payment and Subscription Agreement should be delivered by your Broker-Dealer or Registered Investment Advisor, as applicable, to the address below. Benefit Plan Investors should follow the escrow instructions in the PPM under "Plan of Distribution - Special Notice to Benefit Plan Investors."

| Company Mailing Address: |
|---|

EquiAlt Secured Income Portfolio REIT, Inc.
720 E. Henderson Avenue
Tampa, Florida 33602
(855) EquiAlt

| Wiring Instructions and UMB Bank, N.A. Mailing Address: |
|---|

| | |
|---|---|
| **UMB Bank, N.A** | **UMB Bank, N.A.** |
| ABA Routing Number: 101000695 | 1010 Grand Blvd., 4th Floor |
| Account Number: 9800006823 | Mail Stop: 1020409 |
| Account Name: Trust Clearance | Kansas City, Missouri 64106 |
| Ref: EquiAlt 146819 FBO [Investor Name] | Attention: Lara Stevens, |
| Attn: Lara Stevens | Corporate Trust & Escrow Services |

**We have placed limitations on the participation of Benefit Plan Investors (as defined in the PPM) in the offering. Benefit Plan Investors should follow the escrow instructions in the PPM under "Plan of Distribution — Special Notice to Benefit Plan Investors."**

## 10. PURCHASER QUESTIONNAIRE

**PLEASE NOTE**: All investors must complete this section of the Subscription Agreement.

# Subscription Agreement
*Private Placement Offering*



## 1. SUBSCRIPTION AMOUNT

State of Sale: ▮▮▮▮

*\* Minimum investment is $25,000, or $5,000 for qualified accounts.*
*\* Money Orders, Traveler's Checks, Starter Checks, Foreign Checks, Counter Checks, Third-Party Checks and Cash cannot be accepted.*

Amount of Subscription: _____

☐ Shares are being purchased net of commissions.
☐ Shares are being purchased net of dealer manager fees.
☐ Purchase qualifies for volume discount as described in the PPM *(as defined below).*

## 2. ACCOUNT TYPE (Check ONE box only)

☒ Individual *(If applicable, attach TOD form)*
☐ Joint Tenant[1] *(If applicable, attach TOD form)*
☐ Tenants in Common[1]
☐ Community Property[1]
☐ UGMA:  State of ▮▮▮▮
☐ UTMA:  State of ▮▮▮▮
☐ Trust[2,3]

☐ S-Corporation[2]
☐ C-Corporation[2]
☐ Partnership[2]
☐ Pension Plan[2,4]
☐ Profit Sharing Plan[2,4]
☐ KEOGH Plan[2,4]
☐ Other[2] _____

☐ 401K[4]
☐ Traditional (Individual) IRA[4]
☐ Simple IRA[4]
☐ SEP IRA[4]
☐ ROTH IRA[4]
☐ Beneficial IRA[4] as Beneficiary for: _____
*(Name of Deceased Owner)*

*(1) All parties must sign. (2) Please attach pages of trust/plan document (or corporate/entity resolution) which lists the name of trust/plan/entity, trustees/officers or authorized signatories, signatures and date. (3) The Certification of Investment Powers for Trust Accounts form may be completed in lieu of providing trust documents. (4) These accounts are considered to be investments by Benefit Plans and as such are subject to certain limitations and escrow terms as described in the Confidential Private Placement Memorandum of EquiAlt Secured Income Portfolio REIT, Inc., as amended and supplemented as of the date hereof (the "PPM").*

## 3. ACCOUNT INFORMATION (SSN OR TIN REQUIRED)

Investor/Trustee 1 Name   Georgia Murphy

SSN/Tax ID _____   DOB ▮▮▮▮

Investor/Trustee 2 Name _____

SSN/Tax ID _____   DOB _____

▷ **Please complete if registration of shares is different than above:**

Account Registration _____

Taxable ID _____

Legal Address ▮▮▮▮    City ▮▮▮▮  State ▮▮ Zip Code ▮▮▮▮

Mailing Address  same    City _____
*(If same as above, please write "same")*    State _____ Zip Code _____

Phone *(Day)* ▮▮▮▮

Phone *(Evening)* _____

E-mail Address ▮▮▮▮

☒ US Citizen ☐ US Citizen residing outside the US

☐ Foreign citizen, country _____

*A U.S. Social Security number or Taxpayer Identification Number is required for all entities and authorized signers to open an account. Nonresident Aliens must supply a completed and signed original IRS Form W-8BEN.*

☐ **Check here if you are subject to backup withholding**
*Please attach a copy of the withholding notice.*

**Sign here if you would like to receive investor communications electronically**
*Electronic delivery of investor communications is optional.*

_____ _____
Signature of Investor          Date

*By signing here EquiAlt Secured Income Portfolio REIT, Inc. may make certain investor communications available on its website at www.equialtreit.com and notify you via e-mail when such documents are available. Investor communications that may be delivered electronically include account statements, tax forms, annual reports, acquisition updates, proxy statements and other investor communications. By electing electronic delivery, you agree that you have the appropriate hardware and software to receive e-mail notifications and view PDF documents. You understand you may incur certain costs associated with downloading and printing investor documents. Electronic delivery also involves risks related to system or network outages that could impair your timely receipt of or access to your documents. EquiAlt Secured Income Portfolio REIT, Inc. may choose to send one or more items to you in paper form despite your consent to electronic delivery. You may also request a paper copy of any particular investor document. Your consent will be effective until you revoke it by either written consent to EquiAlt Secured Income Portfolio REIT, Inc. or by contacting EquiAlt Secured Income Portfolio REIT, Inc. at (855) EquiAlt.*

*Important Note About Proxy Voting: By signing this Subscription Agreement, Investor grants EquiAlt Secured Income Portfolio REIT, Inc.'s advisor, EquiAlt Capital Advisors LLC, an irrevocable authorization to be Investor's proxy at any meeting of the company's stockholders, with permission to vote the number of shares of common stock that are owned by the Investor as reflected on the records of EquiAlt Secured Income Portfolio REIT, Inc. as of the applicable record date at any meeting of the stockholders, on any proposal put to a stockholder vote that the board of directors of EquiAlt Secured Income Portfolio REIT, Inc. believes is necessary to comply with any state or federal rule, law or regulation or to comply with any request made by a state or federal administrative body in connection with the registration of an initial public offering of shares of common stock. This irrevocable proxy authorization will continue until the shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc. are registered in all jurisdictions for which an initial application for registration is filed and not withdrawn.*

## 4. CUSTODIAN/THIRD PARTY ADMINISTRATOR INFORMATION

Custodian/Administrator Name

Custodian/Administrator Address 1

Custodian/Administrator Address 2

Custodian/Administrator City                    State          Zip Code

Custodian/Administrator Phone No.

Custodian/Administrator Tax ID

Investor's Account No. with Custodian/Administrator

*By executing this Subscription Agreement, the Custodian/Administrator certifies to the Company that the shares purchased pursuant to this Subscription Agreement are held for the benefit of the investor named in section 3 of this Subscription Agreement (the "Beneficial Owner"). The Custodian/Administrator agrees to notify the Company promptly, but in any event within 30 days of any change in the names of the Beneficial Owner or the number of shares for which the Custodian/Administrator holds shares. The Custodian/Administrator confirms that the Company is entitled to rely on these representations for purposes of determining the stockholders entitled to notice of or to vote at each annual or special meeting of stockholders of the Company until delivery by the Custodian/Administrator to the Company of a written statement revoking such representations (provided, however, that any such revocation delivered after the record date or the closing of the stock transfer books of the Company in respect of any annual or special meeting of stockholders, but on or prior to the date of such annual or special meeting of stockholders shall not be effective until after the holding of such annual or special meeting of stockholders of the Company). Each Beneficial Owner (and not the Custodian/Administrator) will then be deemed the holder of record for the shares of common stock for purposes of determining the stockholders holding common stock entitled to notice of or to vote at each annual or special meeting of stockholders.*

## 5. DISTRIBUTION INFORMATION (CHOOSE ONE OR MORE OF THE FOLLOWING OPTIONS)

If you select more than one option you must indicate the percentage of your distribution to be applied to each option and the sum of the allocations **must** equal 100%. Without custodial approval, cash distributions will be paid directly to the custodian for all custodial accounts. If you do not complete this section, distributions will be paid to the registered owner at the address in Section 3, or for custodial held accounts, to the address listed in Section 4 of the Subscription Agreement.

**% of distribution**

☐ Send distributions via check to investor's home address *(not available without custodial approval)* .....................

☐ Send distributions via check to alternate payee listed here *(not available without custodial approval)* ...................

Name

Address

City                    State          Zip Code

Account No.

☐ **Direct Deposit** *(Attach Voided Check)* I authorize EquiAlt Secured Income Portfolio REIT, Inc., or its agent (collectively, EquiAlt) to deposit my distributions in the checking or savings *(not available for brokerage accounts)* account identified below. This authority will remain in force until I notify EquiAlt in writing to cancel it. In the event that EquiAlt deposits funds erroneously into my account, EquiAlt is authorized to debit my account for an amount not to exceed the amount of the erroneous deposit *(not available without custodial approval)* .......    **% of distribution**

Financial Institution Name                              ☐ Checking   ☐ Savings

ABA/Routing No.                    Account No.

6

## 6. BROKER-DEALER AND REGISTERED REPRESENTATIVE INFORMATION

**To subscribe through a Broker-Dealer, a Selected Dealer Agreement must be executed with the Company to be listed as agent/firm of record. Benefit Plans may only subscribe for shares through a Broker-Dealer or a Registered Investment Advisor.**

| | |
|---|---|
| Broker-Dealer Name | |
| Representative Name | Rep. No. |
| Representative's Company Name | Branch ID |
| Representative's Address | |
| Rep's City | State |
| Rep's Phone No. | Fax No. |
| Rep's E-mail Address | |

| Zip Code | |
|---|---|

*REGISTERED INVESTMENT ADVISOR (RIA): If a RIA has introduced a sale, the sale may be conducted through (i) the RIA in its capacity as a Registered Representative, if applicable; (ii) a Registered Representative of a Broker-Dealer that is affiliated with the RIA, if applicable; (iii) an unaffiliated Broker-Dealer; or (iv) without a Broker-Dealer.*

## 7. ACCREDITED INVESTOR STATUS

The undersigned hereby confirms that the Investor is an "accredited investor" as such term is defined under the Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act"), pursuant to the following representations:

**For Individual or Joint Investors:** *(Please check all that apply:)*

☐    I have an individual net worth, or joint net worth with my spouse, in excess of $1,000,000, where, for purposes of calculating net worth:

    (i)    My primary residence is not included as an asset;

    (ii)    Indebtedness that is secured by my primary residence, up to the estimated fair market value of my primary residence at the time of the sale of shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc., is not included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc. exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess is to be included as a liability); and

    (iii)    Indebtedness that is secured by my primary residence in excess of the estimated fair market value of my primary residence at the time of the sale of shares is included as a liability.

☐    I had an individual gross income (excluding any income of my spouse) exceeding $200,000 in each of the last two calendar years or for each of such years my combined income with my spouse exceeded $300,000, and I reasonably expect to reach the same income level in the current year.

**For IRA/Qualified Pension, Profit Sharing of Keogh Investors and Other Plans:** *(Please check all that apply:)*

☐    The subscriber is an "individual retirement account" ("IRA") under Section 408(a) of the Internal Revenue Code of 1986, as amended, owned by and for the benefit of an "accredited investor" or a self-directed plan (e.g. 401(k) plan or profit sharing plan) in which all investment decisions are made solely by, and such investments are made on behalf of, "accredited investors."

☐    The subscriber is an "employee benefit plan" within the meaning of ERISA with either (1) total assets in excess of $5,000,000, or (2) its investment decisions made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company or registered investment advisor or, if a self-directed plan, with investment decisions made solely by persons that are "accredited investors."

☐    The subscriber is a plan established or maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, and such plan has total assets in excess of $5,000,000.

**For Trust Investors:** *(Please check all that apply:)*

☐    The Trust is a revocable trust, and the Grantor of the Trust is an "accredited investor."
☐    The Trust is an irrevocable trust, and the trustee is a bank as defined in Section 3(a)(2) of the Securities Act.
☐    The Trust is an irrevocable trust, has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc., and is directed by a "sophisticated person" as described in Rule 506 (b) (2) (ii) under the Securities Act.

## 7. ACCREDITED INVESTOR STATUS (CONTINUED)

**For Corporate, Partnership, Limited Liability Company or Other Entity or Organization Investors:** *(Please check all that apply:)*

☐   The subscribing entity is an organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or a corporation, a Massachusetts or similar business trust, or a partnership, that has total assets in excess of $5,000,000 and was not formed for the specific purpose of investing in the shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc.

☐   The subscribing entity is a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended, and purchasing the shares of common stock of EquiAlt Secured Income Portfolio REIT, Inc. for its own account.

☐   The subscribing entity is an insurance company as defined in Section 21(a) (13) of the Securities Act.

☐   The subscribing entity is an investment company registered under the Investment Company Act of 1940, as amended (the "Investment Company Act").

☐   The subscribing entity is a business development company (as defined in Section 2(a)(48) of the Investment Company Act).

☐   The subscribing entity is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

☐   The subscribing entity is a private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended).

☐   The subscribing entity is a bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity.

☐   All of the equity owners of the subscribing entity are "accredited investors."

## 8. SUBSCRIBER SIGNATURES

**TAXPAYER IDENTIFICATION NUMBER CONFIRMATION (REQUIRED): The investor signing below, under penalties of perjury, certifies that (i) the number shown on this Subscription Agreement is his or her correct Taxpayer Identification Number (or he or she is waiting for a number to be issued to him or her), (ii) he or she is not subject to backup withholding either because he or she has not been notified by the Internal Revenue Service ("IRS") that he or she is subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified him or her that he or she is no longer subject to backup withholding and (iii) he or she is a U.S. Citizen unless otherwise indicated in Section 3. NOTE: CLAUSE (ii) IN THIS CERTIFICATION SHOULD BE CROSSED OUT IF THE WITHHOLDING BOX HAS BEEN CHECKED IN THE INVESTOR INFORMATION SECTION.**

Please separately initial each of the representations below. Except in the case of fiduciary accounts, you may not grant any person a power of attorney to make such representations on your behalf. In order to induce EquiAlt Secured Income Portfolio REIT, Inc. to accept this subscription, I hereby represent and warrant to you as follows:

|  |  | Owner | Joint Owner |
|---|---|---|---|
| (a) | The undersigned is aware of the following: | | |
| | (1) An investment in the shares involves a high degree of risk of loss of the undersigned's entire investment, and the undersigned understands and takes full cognizance of the risk factors related to the purchase of the shares, including, but not limited to, those set forth in the PPM.............................. | Initials | Initials |
| | (2) The shares are restricted securities, and may not be transferred or resold except as permitted under the Securities Act and applicable state securities laws, pursuant to registration or exemption therefrom; no public market for the shares exists and none is expected to develop; it may not be possible for the undersigned to liquidate the undersigned's investment in the shares; and neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved the shares or passed upon the accuracy or adequacy of the PPM. | Initials | Initials |
| (b) | The undersigned has received and carefully read and understands the PPM, this Subscription Agreement, and all other documents in connection therewith, and the undersigned confirms that all documents, records and books pertaining to the investment in the company through the shares have been made available to the undersigned and/or to the undersigned's purchaser representative or other personal investment, tax and legal advisers, if such advisers were utilized by the undersigned, and the undersigned agrees to be bound by the terms of this Subscription Agreement and all such other documents. | Initials | Initials |
| (c) | The information that the undersigned has furnished herein is correct and complete as of the date of this Subscription Agreement and will be correct and complete upon the acceptance of this subscription. The representations, warranties and agreements herein shall survive the acceptance of this subscription and may be relied upon by the company and its officers and affiliates.................................................................. | Initials | Initials |
| (d) | The undersigned will immediately notify the company in writing of any change in any statement made herein, occurring prior to the undersigned's receipt of the company's acceptance of this subscription and such written change will be documented with reference hereto by the undersigned.................................... | Initials | Initials |
| (e) | The undersigned is capable of bearing the high degree of economic risk of this investment including, but not limited to, the possibility of complete loss of investment and the lack of a public market that may make it impossible to readily liquidate the investment whenever desired, and the undersigned's overall commitment to investments that are not readily marketable is not disproportionate to the undersigned's net worth, and the undersigned's investment in the shares will not cause such overall commitment to become excessive. .................... | Initials | Initials |

## 8. SUBSCRIBER SIGNATURES (CONTINUED)

(f) The undersigned has adequate means of providing for its financial requirements, both current and anticipated, and has no need for liquidity in this investment...............................................................

Initials     Initials

(g) The undersigned has knowledge and experience in financial and business matters (either alone or with the aid of a purchaser representative), is capable of evaluating the merits and risks of an investment in the company and its proposed activities, has the ability to protect the undersigned's interests in connection with such investment and has carefully considered the suitability of an investment in the company for the undersigned's particular financial situation, and has determined that the shares are a suitable investment. .............

Initials     Initials

(h) I acknowledge that I am aware that the Company, its external advisor and their officers, directors, employees and affiliates are not undertaking to provide impartial investment advice or to give advice in a fiduciary capacity in connection with this offering or the purchase of the shares and that the advisor has financial interests associated with the purchase of the Company's common stock, as described in the PPM, including fees, expense reimbursements and other payments it anticipates receiving from the Company in connection with the purchase of the shares................................................................................................

Initials     Initials

(i) The undersigned was not solicited by any publication of any advertisement or by any general solicitation, the interest of the undersigned in the shares was privately solicited by the undersigned's purchaser representative with whom the undersigned has a substantive, pre-existing relationship, and the offer to sell the shares was communicated to the undersigned by the company in such a manner that the undersigned was able to ask questions of and receive answers from the company concerning the terms and conditions of this transaction................................................................................................................................

Initials     Initials

(j) The undersigned is the sole party in interest as to the shares subscribed for and is acquiring the shares for the undersigned's own account, for investment only and has no present intention, agreement or arrangement for the distribution, transfer, assignment, resale or subdivision of the shares and the undersigned has adequate means of providing for his/her current needs and personal contingencies, and does not anticipate that he/she will have a need to liquidate or transfer the shares during the term of the investment...............................................................................................................................

Initials     Initials

(k) If the undersigned is an entity, trust, pension fund or IRA account (an "Entity"), the Entity and the person signing on its behalf represent and warrant that: (1) such Entity is an existing entity, and has not been organized or reorganized for the purpose of making this investment (or if not true, such fact has been disclosed to the company in writing along with information concerning the beneficial owners of the Entity); (2) the undersigned has the authority to execute this Subscription Agreement and any other documents required in connection with an investment in the shares; (3) the Entity has the power, right and authority to invest in the shares and enter into the transactions contemplated thereby, and the investment is suitable and appropriate for the Entity and its beneficiaries (given the risks and illiquid nature of the investment); and (4) all documents executed by the Entity in connection with the company are valid and binding documents or agreements of the Entity enforceable in accordance with their terms. .........................................

Initials     Initials

(l) If the undersigned is acquiring shares in a fiduciary or custodial capacity, the above representations, acknowledgments and agreements shall be deemed to have been made on behalf of the person or persons for whose benefits such shares are being acquired, and the name of each such person is indicated under the undersigned's name in this Subscription Agreement. .............................................................................

Initials     Initials

(m) The undersigned (if a resident of Pennsylvania) acknowledges (i) that the undersigned is prohibited from selling the shares for a period of 12 months after the date that the shares are purchased, except in accordance with waivers established by rule or order of the Pennsylvania Securities Commission, (ii) that the shares have not been registered under the Pennsylvania Securities Act of 1972 in reliance upon an exemption therefrom, and (iii) that no subsequent resale or other disposition of the shares may be made within 12 months following the initial sale of the shares in the absence of an effective registration, except in accordance with waivers established by rule or order of the Pennsylvania Securities Commission, and thereafter only pursuant to an effective registration or exemption...........................................................................

Initials     Initials

**The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If custodial held account, Custodian or Administrator must sign.**

| | | |
|---|---|---|
| _Signature of Investor_ | 1/30/2018 | _Signature of Joint Investor or, for Custodial_ |
| | _Date_ | _Held Accounts, of Custodian/Administrator_ |
| | | _Date_ |

**Investors will receive confirmations of their purchases upon acceptance of their subscriptions.**

WEST\278973484.2

## 9. FINANCIAL REPRESENTATIVE SIGNATURES

If applicable, the Investor's financial advisor must sign below to complete the order. The financial advisor hereby warrants that he/she: (i) is duly licensed and may lawfully sell shares of common stock in the state designated as the Investor's legal residence and (ii) has established a pre-existing relationship with the Investor prior to EquiAlt Secured Income Portfolio REIT, Inc. contemplating or initiating the offering of shares, the financial advisor agrees to maintain records of the information used to determine that an investment in shares is suitable and appropriate for the Investor for a period of six years, as well as documents establishing a pre-existing relationship between the financial advisor and the Investor. The undersigned confirm(s) by their signatures that they have (i) reasonable grounds to believe, on the basis of information supplied by the Investor who has completed this Subscription Agreement concerning his, her or its investment objectives, other investments, financial situation, liquidity and marketability and needs, and other pertinent information that: (1) the Investor is an accredited investor as defined in Section 501(a) of Regulation D and meets the investor suitability requirements set forth in the PPM; (2) the Investor can reasonably benefit from an investment in the shares of the common stock of EquiAlt Secured Income Portfolio REIT, Inc. based on such Investor's overall investment objectives and portfolio structure; (3) the Investor is able to bear the economic risk of the investment based on such Investor's overall financial situation; (4) the Investor has an apparent knowledge of (A) the features and characteristics of an investment in the shares, (B) the fundamental risks of an investment in the shares, (C) the risk that such Investor may lose his or her entire investment, (D) the lack of liquidity of the shares, (E) the restrictions on transferability of the shares, and (F) the tax consequences of an investment in the shares.

The financial advisor also hereby warrants that they are not or have not been subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act and listed in the instructions to this Subscription Agreement.

The undersigned further confirms by their signatures that, to the extent the investor identified herein is a plan, plan fiduciary, plan participant or beneficiary, IRA, or IRA owner subject to Title I of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended ("Code"): (i) there is no financial interest, ownership interest, or other relationship, agreement, or understanding that would limit their ability to carry out their fiduciary responsibility to such investor beyond the control, direction, or influence of other persons involved in such investor's purchase of shares; (ii) they are capable of evaluating investment risk independently, both in general and with regard to particular transactions and investment strategies; and (iii) they are a fiduciary under ERISA or the Code, or both, with respect to such investor's purchase of shares, and they are responsible for exercising independent judgment in evaluating such investor's purchase of shares.

The undersigned confirm(s) by their signatures that the representations and warranties above are and shall be continuing representations and warranties throughout the term of the offering. In the event that any of these representations or warranties become untrue, the undersigned will immediately notify EquiAlt Secured Income Portfolio REIT, Inc. in writing of the fact which makes the representation or warranty untrue.

I understand this Subscription Agreement is for EquiAlt Secured Income Portfolio REIT, Inc.

| | | | |
|---|---|---|---|
| Signature of Financial Representative | Date | Branch Manager Signature (If required by Broker/Dealer) | Date |

**Until we have raised the minimum amount:** You should make your check payable to "UMB Bank, N.A., as escrow agent for EquiAlt Secured Income Portfolio REIT, Inc." Payment and Subscription Agreement should be delivered by your Broker-Dealer or Registered Investment Advisor, as applicable, to UMB Bank, N.A., as Escrow Agent for EquiAlt Secured Income Portfolio REIT, Inc. at the UMB Bank, N.A. address listed below.

**Once we have raised the minimum amount:** You should make your check payable to "EquiAlt Secured Income Portfolio REIT, Inc." Payment and Subscription Agreement should be delivered by your Broker-Dealer or Registered Investment Advisor, as applicable, to the address below.

**Company Mailing Address:**

**EquiAlt Secured Income Portfolio REIT, Inc.**
**720 E. Henderson Avenue**
**Tampa, Florida 33602**
**(855) EquiAlt**

**Wiring Instructions and UMB Bank, N.A. Mailing Address:**

| | |
|---|---|
| **UMB Bank, N.A** | **UMB Bank, N.A.** |
| **ABA Routing Number: 101000695** | **1010 Grand Blvd., 4th Floor** |
| **Account Number: 9800006823** | **Mail Stop: 1020409** |
| **Account Name: Trust Clearance** | **Kansas City, Missouri 64106** |
| **Ref: EquiAlt 146819 FBO [Investor Name]** | **Attention: Lara Stevens,** |
| **Attn: Lara Stevens** | **Corporate Trust & Escrow Services** |

**We have placed limitations on the participation of Benefit Plan Investors (as defined in the PPM) in the offering. Benefit Plan**

Investors should follow the escrow instructions in the PPM under "Plan of Distribution – Special Notice to Benefit Plan Investors."

WEST\278973484.2

## 10. PURCHASER QUESTIONNAIRE (ALL INVESTORS MUST COMPLETE THIS SECTION.)

**1. SOURCE OF FUNDS FOR INVESTMENT**

☐ Savings ☐ Individual Retirement Account ☐ 401k/pension ☐ Sale of other investments
☐ Capital set aside for investments ☐ Bonus ☐ Line of credit ☒ Other  LLC UNITS

**2. INVESTOR INFORMATION**

a. General Information

| | | |
|---|---|---|
| Name | Georgia Murphy | ☐ Single ☐ Married |
| Name of Joint Tenant (or Tenant-In-Common) | | Age |
| Name of Entity | | |

Type of Entity ☐ Corporation ☐ Partnership ☐ LLC ☐ Trust ☐ Limited Partnership ☐ Other

b. Current and prior employment, positions or occupations
*(Please set forth employment history during at least the past five years, including service on boards of directors, etc.)*

| | | |
|---|---|---|
| Employer | | Title |
| Business Address | | Years of Service |

c. Professional licenses or registration of Investor or Corporate/Trust Representative

d. Highest Level of Education of Investor or Corporate/Trust Representative

| | | |
|---|---|---|
| School | | Dates of Attendance |
| Field of Study | | Degree |

e. Prior investment experience in alternative investments
Name and Types of Investment *(natural gas and oil, real estate, equipment leasing, etc.)*

| | | |
|---|---|---|
| | Years Invested | |
| | Years Invested | |

f. Other investments *(i.e. stocks, bonds, real estate, options)*, which would reflect your knowledge and experience in financial and business matters.

g. Have you previously purchased securities which were sold in reliance on private offering exemptions from registrations under the Securities Act?
☐ Yes ☐ No

**13**



Dear Georgia Murphy,

In an effort to streamline our processes and "Go-Green", EquiAlt and it's subsidiaries will no longer be issuing paper statements. EquiAlt has made it possible for you to have complete access to your account online. To set up your account please visit us at

https://investor-reporting.equialtreit.com/register_new_account

Please reference your account number listed below to complete the set up.

Account Number:

9582

Once you have completed the setup process you will have complete access to your account online and the ability to generate statements directly from your account.

For further assistance please contact our investor relations department at IR@equialtreit.com

Sincerely,

EquiAlt Team





Dear Valued Investor,

We are striving to provide excellent customer service that is both timely and easily accessible.  You now have access to our customer service email and phone number.

**\*Email:**    customerservice@equialt.com

**\*Phone:**    602-953-7818

We are available to answer any questions or discuss any concerns that you may have.  We are also able to connect you with your Financial Advisor for information they may need to provide.

Just a reminder that you can view your quarterly reports through our online portal.  If you need assistance with log-in access you can contact Christos Anastasopoulos at christos@equialt.com or 602-228-9207.

We thank you for your continued patronage and trust in Equialt.  As always, we greatly appreciate your business.

Sincerely,

Becky Wiebe

Becky Wiebe

Executive Administrative Coordinator

602-973-7022

becky@equialt.com



Georgia Murphy,

My name is Barry M Rybicki and I am the Managing Director for EquiAlt.  I would like to take this time to say Thank You for investing your money with our company.  I know you have plenty of options when it comes to investing and for you to choose us is a great compliment and for that I say Thank you once again.

We are in receipt of your $250,000.00 investment on December 21, 2016.  Summarizing your investments:

-   **36 month term, with an option to renew**

-   **Your investment is earning 10.00% annually**

-   **Payments to begin in January 2017**

Once again I would like to say Thank you, we appreciate your business and trust in EquiAlt LLC.  Please do not hesitate to contact me at any time if you have any questions or concerns.

Cordially,

12/22/16

Barry M. Rybicki

Managing Director

602.769.4266

barry@equialt.com





## SUMMARY OF TERMS

This document dated _12-1-16_ will serve as a summary to the PPM Agreement.

Amount of Investment:  $_250,000_

Annual Rate: _10_ %

Payment requested: (Monthly)   Quarterly   Semi   Annual   Growth   Variable

Term: _36_ months

Receipt of funds date: _12-21-16_

Payment start date (if not growth fund and minimum of 45 days from today):
_1-1-17_

Payment will always be postmarked no later than 5th of the Month

Signed and mutually agreed by:

_____

Barry M. Rybicki

EquiAlt Fund LLC

X _Georgia Murphy_
_12-2-16_

Acct #

Routing #

Re:

pay $1,000 to

pay remaining monthly interest to

**EXHIBIT A**

**FORM OF DEBENTURE**

**THIS SECURITY HAS NOT BEEN REGISTERED WITH THE U.S. SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE, AND IS ISSUED IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR RE-SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS.**

**<u>10% DEBENTURE</u>**

$250,000.00                                                       December 21, 2016

FOR VALUE RECEIVED, the undersigned, EquiAlt Fund LLC, a Nevada limited liability company having an address of 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145 ("Maker"), promises to pay to the order of Georgia Murphy having an address of ███████ ██████████████████████████ ("Holder"), the principal sum of Two Hundred Fifty Thousand and NO/100 Dollars ($250,000.00) (the "Principal Amount"), together with interest on the unpaid Principal Amount thereof computed from the date hereof (the "Commencement Date"), at the rates provided herein, on the Maturity Date defined in Section 1 hereof.

1.   Maturity.  The Principal Amount and any unpaid interest due under this debenture (the "Debenture") shall be due and payable on January 1, 2020 (the "Maturity Date").

2.   Interest Rate and Payments.  Interest hereunder shall accrue as follows:

(a)      From the Commencement Date, interest shall accrue on the unpaid Principal Amount at the rate of Ten and 00/100 percent (10%) per annum.

(b)      The Maker shall pay to Holder Monthly payments, commencing January 2017. Each payment hereunder shall be credited first to Holder's unpaid interest, and the balance, if any, to the reduction of the Principal Amount.

3.  <u>Prepayment</u>.  This Debenture may be prepaid in whole or in part at any time, without penalty or premium, it being understood and agreed that, except as expressly provided herein, Maker shall not be entitled, by virtue of any prepayment or otherwise, to a refund of interest, any other fees, points, charges and the like paid by Maker to Holder in connection with his Debenture.

4.  <u>Waiver</u>.  Maker hereby waives all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Maker further waives trial by jury.  No extension of time for payment of this Debenture or any installment hereof, no alteration, amendment or waiver of any provision of this Debenture and no release or substitution of any collateral securing Maker's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker under this Debenture.

5.  <u>Default and Remedies</u>.  At the election of the holder of this Debenture, all payments due hereunder may be accelerated, and this Debenture shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "<u>Event of Default</u>"): (1) Maker fails to pay on or before the date due, any amount payable hereunder; (2) Maker fails to perform or observe any other term or provision of this Debenture with respect to payment; or (3) Maker fails to perform or observe any other term or provision of this Debenture, which default is not cured within sixty (60) days of receipt of written notice.   In addition to the rights and remedies provided herein, the holder of this Debenture may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

Any forbearance by the holder of this Debenture in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Debenture or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Debenture.  The acceptance by the holder of this Debenture of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Debenture to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

6.  <u>Assignment of Debenture</u>.  If this Debenture is transferred in any manner by Holder, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof, provided, however, that any assignment by Holder must comply with applicable Federal and state securities laws, and Maker shall be entitled to demand an opinion of counsel opining that any transfer will comply with said laws.

7.   Waiver of Offset. By its acceptance of Holder's funds and execution of this Debenture, Maker acknowledges, agrees and confirms that, as of the time of signing, it has no defense, offset or counterclaim for any occurrence in relation to this Loan.

8.   Acceptable Currency. All payments of principal and interest hereunder are payable in lawful money of the United States of America.

9.   Joint and Several Obligations. If more than one person signs this Debenture, each person signs as a Maker, unless otherwise stated and shall be fully, jointly, severally and personally obligated to keep all of the promises made in this Debenture, including the promise to pay all sums due and owing.

10.  Miscellaneous.   This Debenture shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns. This Debenture shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.   This Debenture shall be exclusively governed by the laws of the State of Nevada without regard to choice of law consideration.   Maker hereby irrevocably consents to the jurisdiction of the courts of the State of Nevada and of any federal court located in Nevada in connection with any action or proceeding arising out of or relating to this Debenture.  This Debenture may not be changed or terminated except upon the prior written agreement of the Holder.   A determination that any portion of this Debenture is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Debenture to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

11.  Jury Waiver.   **MAKER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY MAKER OR THE HOLDER OF THIS DEBENTURE ON OR WITH RESPECT TO THIS DEBENTURE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.  MAKER AND HOLDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.   MAKER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN.  FURTHER, MAKER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  MAKER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS DEBENTURE AND THAT HOLDER WOULD NOT EXTEND CREDIT TO MAKER IF THE**

**WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS DEBENTURE.**

*[Remainder of this page intentionally blank.]*

EQUIALT FUND LLC

IN WITNESS WHEREOF, the Maker has executed this Debenture on the date first above written.

**MAKER:**

EquiAlt Fund LLC
a Nevada limited liability company

By:  EquiAlt LLC
    a Nevada limited liability company
    its Manager

By: _____
Name: _Barry M Rybicki_
Title: _Managing Director_

Name of Prospective Purchaser: _____ *Georgia Murphy*

State of Domicile: _____ *CA*



## EQUIALT FUND, LLC

**PROSPECTIVE PURCHASER QUESTIONNAIRE**

INSTRUCTIONS:  IN ORDER TO INVEST IN EQUIALT FUND, LLC, YOU MUST COMPLETE THIS INVESTOR QUESTIONNAIRE BY FILLING IN THE INFORMATION CALLED FOR, CHECKING THE APPROPRIATE BOXES, AND SIGNING AT PAGE 3.  THEN, YOU MUST COMPLETE THE SUBSCRIPTIONS AGREEMENT BY DESIGNATING THE NUMBER OF UNITS TO BE PURCHASED, PROVIDING THE INFORMATION REQUIRED AND SIGNING.  NO SUBSCRIPTION IS EFFECTIVE UNTIL ACCEPTED BY THE COMPANY.

CONFIDENTIALITY:  THE INFORMATION THAT YOU PROVIDE WILL BE USED SOLELY FOR THE PURPOSES OF MAKING VARIOUS DETERMINATIONS IN CONNECTION WITH THE COMPANYS' COMPLIANCE WITH APPLICABLE SECURITIES LAWS.  NO FINANCIAL INFORMATION DISCLOSED HEREIN WILL BE DISCLOSED TO THIRD PARTIES OR USED FOR ANY PURPOSES OTHER THAN SUCH LEGAL DETERMINATIONS BY THE COMPANY AND ITS LEGAL COUNSEL.

**E<span>QUIALT</span> FUND, LLC**

PROSPECTIVE PURCHASER QUESTIONNAIRE

TO:    EQUIALT FUND, LLC

c/o Fox Rothschild LLP

Wells Fargo Tower, Suite 500

3800 Howard Hughes Parkway

Las Vegas, NV 89169

Ladies and Gentlemen:

In connection with the proposed purchase of Class A membership units (the "Securities") in EquiAlt Fund, LLC (the "Company"), the undersigned hereby represents as follows:

1. **Representations as to Accredited Investor Status.** The undersigned has read the definition of "Accredited Investor" from Rule 501 of Regulation D attached hereto as "Exhibit A", and certifies that either (circle only one):

   A.  The undersigned is an "Accredited Investor" for one or more of the following reasons (circle all that apply):

   a.  The undersigned is an individual (not a partnership, corporation, etc.) whose individual net worth, or joint net worth with his or her spouse, presently exceeds $1,000,000;

   b.  The undersigned is an individual (not a partnership, corporation, etc.) who had an income in excess of $200,000 in each of the two most recent years, or joint income with their spouse in excess of $300,000 in each of those years (in each case including foreign income, tax exempt income and full amount of capital gains and losses but excluding any income of other family members and any unrealized capital appreciation) and has a reasonable expectation of reaching the same income level in the current year;

   c.  The undersigned is a director or executive officer of the Company, which is issuing and selling the Securities;

   d.  The undersigned is a corporation, partnership, business trust, or non-profit organization within the meaning of Section 501(c)(3) of the Internal Revenue Code, in each case not formed for the specific purpose of acquiring the Securities and with total assets in excess of $5,000,000; (describe entity):

   _____
   _____
   _____
   _____

    e.   The undersigned is a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Securities, where the purchase is directed by a "sophisticated person" as defined in Regulation 506(b)(2)(ii);

    f.   The undersigned is an entity all the equity owners of which are "Accredited Investors" within one or more of the above categories.  <u>If relying upon this Category alone, each equity owner must complete a separate copy of this Agreement:</u>(describe entity)
_____

B.    The undersigned is <u>not</u> an "Accredited Investor."  However, the undersigned represents and warrants the following:

The undersigned is an individual whose individual net worth, or joint net worth with his or her spouse, if applicable, is approximately $_____;

The undersigned had an income of approximately $_____ in 2015, and has a reasonable expectation of earning an annual income of approximately $_____ in the current year.

2.   **Entity Type.**  The undersigned is (circle only one):

(A) - An individual

B - A corporation

C - A partnership

D - A trust

E - Other

3.   **Tax I.D. Number.**  The social security number of federal tax ID number of the undersigned is:
▬ ███████████████ ▬▬▬▬

4.   **Address.**  The address of the undersigned is:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

The phone, fax and contact person (if an entity) are as follows:

Phone: ██████████████████▬▬

Fax: _____

Contact: _____

5. **Investment Intent.** By the execution of this questionnaire, the undersigned represents to the Company that the undersigned: (a) understands that the offering of the Securities has not been and will not be registered under the Securities Act of 1933, as amended, or state securities laws, by reason of claimed exemptions under the provisions of such laws which depend, in part, upon the undersigned's investment intention, (b) is purchasing or would purchase the Securities for the undersigned's own account for investment and not with a view toward the resale or distribution to others, and (c) was not formed for the specific purpose of purchasing securities of the Company.

The foregoing representation is true and accurate as of the date hereof and shall be true and accurate as of the date of Closing.  If in any respect such representation shall not be true and accurate prior to Closing, the undersigned shall give immediate notice of such fact to the management of the Company.

Dated: _____12.1.2016_____

Very truly yours,

Print name of Investor: Georgia Murphy   Print Name of Joint Investor: _____

Signature: _____   Signature: _____

Print Title (if applicable): _____   Print Title (if applicable): _____

**EXHIBIT A**

**Rule 501. Definitions and Terms Used in Regulation D.**

As used in Regulation D, the following terms have the meaning indicated:

**Accredited Investor.** "Accredited Investor" shall mean any person who comes within any of the following categories, at the time of the sale of the securities to that person:

1.  Any bank as defined in section 3(a)(2) of the Act or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; insurance company as defined in Section 2(13) of the Act; investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of the Act; Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301 (c) or (d) of the Small Business Investment Act of 1958; employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000; or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

2.  Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

3.  Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

4.  Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of the issuer;

5.  Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

6.  Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7.  Any trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii); and

8.  Any entity in which all of the equity owners are accredited investors.

# SUBSCRIPTION AGREEMENT

## FOR

## EQUIALT FUND, LLC

### A Nevada limited liability company

THIS SUBSCRIPTION AGREEMENT (the "Agreement") is made by and among EquiAlt Fund, LLC, a Nevada limited liability company (the "Company"), and the individuals and/or entities purchasing the securities hereunder (individually, a "Subscriber" and collectively, the Subscribers").

WHEREAS, the Company desires to issue up to a maximum of One Hundred Million (100,000,000) units of Class A membership interest (the "Maximum Offering") to certain Accredited Investors, as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (the "Act")

WHEREAS, each Subscriber has been furnished with an executive summary of this offering, a copy of the Company's operating agreement, an accredited investor questionnaire, this Agreement and the Risk Factors incorporated into the Agreement, as such may have been amended or supplemented from time to time (collectively, the "Offering Documents"); and

WHEREAS, the Subscriber desires to purchase that number of units set forth on the signature page hereof on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual representations and covenants set forth herein, the parties agree as follows:

1. Purchase and Sale of Units.

    1.1. Purchase of Units. Subject to the terms and conditions of this Agreement, the Subscribers agree to purchase at the Closings that number of units up to an aggregate of One Hundred Million (1,000,000) units of Class A membership interest at a purchase price of Ten Dollars ($10.00) per unit, as may be subscribed to by the Subscribers in this offering. The Units issued to the Subscribers pursuant to this Agreement (including counterpart versions hereof) shall be referred to herein as the "Units".

    1.2. Company reservation of Rights to Terminate or Deny. The Company reserves the right to refuse all or part of any or all subscriptions. Furthermore, no Subscription Agreement shall be effective until accepted and executed by the Company and the Company shall have the right, in its sole discretion, for any reason or for no reason, to refuse any potential Subscribers.

2. <u>Closing and Delivery.</u>

2.1. <u>Initial Closing Date.</u>  The initial purchase and sale of the Units shall take place at such time and place as the Company determines (the "Initial Closing").  At the Initial Closing, the Company shall deliver to each Subscriber a certificate representing the Units to be purchased in the Closing by the Subscriber.  The purchase price for the Units is payable by check or wire transfer payable to the Company or its designee in an amount equal to the applicable purchase price per unit multiplied by the number of Units being purchased by such Subscriber.  Each Subscriber hereby authorizes and directs the Company to deliver the Units to be issued to the Subscriber pursuant to this Agreement directly to the Subscriber at the residential or business address indicated on the signature page hereto.

2.2. <u>Subsequent Closings.</u>  The Company may conduct subsequent closings on an interim basis (each referred to as a "Closing"), until the Maximum Offering amount has been reached (subject to increase in the event of oversubscription of the offering).  All such sales shall be made on the terms and conditions set forth in this Agreement.  Any Units sold pursuant to this Section 2.2 shall be deemed to be "Units" and any Subscribers thereof shall be deemed to be "Subscribers" for all purposes under this Agreement.

3. <u>Representations and Warranties of the Company.</u>  The Company hereby represents and warrants to the Subscribers that:

3.1. <u>Organization, Good Standing and Qualification.</u>  The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Nevada and has all requisite corporate power and authority to carry on its business as now conducted and as proposed to be conducted.  The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify would have a material adverse effect on its business or properties.

3.2. <u>Authorization.</u>  All action on the part of the Company, and its managers, necessary for the authorization, execution and delivery of this Agreement and the issuance of the Units, the performance of all obligations of the Company hereunder and there under has been taken or will be taken prior to the Closing, and this Agreement constitutes a valid and legally binding obligation of the Company, enforceable in accordance with its terms.

3.3. <u>Valid Issuance of Units.</u>  (A) The Units, when issued, sold and delivered in accordance with the terms hereof for the consideration expressed herein or therein, will be duly and validly issued and fully-paid and non-assessable.  Based in part upon the representations of the Subscribers in this Agreement and subject to the completion of the filings referenced below, the Units will be issued in compliance with all applicable federal and state securities laws.  (B) The Units, are or as of the Initial Closing will be, duly and validly authorized and issued, fully-paid, and were or will be issued in compliance with all applicable federal and state laws.

3.4. <u>Governmental Consents.</u>  No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any federal, state or local government authority on the part of the Company is required in connection with the consummation of the transactions contemplated by this Agreement, except for the Federal and State Securities Law Filings to be made by the Company as necessary.

3.5. <u>Litigation.</u>  There is no action, suit, proceeding or investigation pending or currently threatened against the Company that questions the validity of the Agreement, or the right of the Company to enter into this Agreement, or to consummate the transactions contemplated hereby, or that might result, either individually or in the aggregate, in any material adverse changes in the assets, condition, affairs or prospects of the Company, financially or otherwise, or any change in the current equity ownership of the Company, nor is the Company aware that there is any basis for the foregoing.  The Company is not a party or subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality.  There is no action, suit, proceeding or investigation by the Company currently pending or which the Company intends to initiate.

3.6. <u>Compliance with Other Instruments.</u>  The Company is not in violation or default of any provisions of its Articles of Organization or Operating Agreement or of any instrument, judgment, order, writ, decree or contract to which it is a party or by which it is bound or, to its knowledge, of any provision of federal or state statute, rule or regulation applicable to the Company.  The execution, delivery and performance of the Agreement, and the consummation of the transactions contemplated hereby, will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree or contract or an event which results in the creation of any lien, charge or encumbrance upon any assets of the Company.

3.7. <u>Disclosure.</u>  The forward-looking statements, including financial projections, contained in the Offering Documents were prepared in good faith; however, the Company does not warrant that such statements will ultimately become true.  In addition to the foregoing, the Company restates as if rewritten herein the Risk Factors attached hereto as Schedule I as if fully rewritten herein and the following:                          (A) <u>*No Independent Studies*</u>.  The determination of the Company's capital requirements and the intended use of proceeds from this Offering is based solely upon information developed by the Company.  No independent studies with regard to feasibility, management, or marketing have been conducted by any third parties in determining the Company's capital requirements or requirements.
(B) <u>*Structure of the Offering*</u>.  The Units are being sold through the Company without commissions.  The Offering is being conducted on a "best efforts" basis.

4. <u>Representations and Warranties of the Subscribers.</u>  Each Subscriber hereby severally and not jointly represents and warrants to the Company that:

4.1. <u>Risk.</u>  The Subscriber recognizes that the purchase of the Units involves a high degree of risk in that (i) the Company has limited operation history; (ii) an investment in the Company is highly speculative, and only investors who can afford the loss of their entire investment should consider investing in the Company and the Units; (iii) the Subscriber may not be able to liquidate his, her or its investment; and (iv) transferability of the Units is extremely limited.

4.2. <u>Accredited Investor.</u>  The Subscriber represents that the Subscriber is an officer, director or equivalent of the Company, and /or is an "Accredited Investor," as such term is defined in Rule 501 of Regulation D promulgated under the Act, and that the Subscriber is able to bear the economic risk of an investment in the Units.

4.3. <u>Investment Experience.</u>  The Subscriber hereby acknowledges and represents that the Subscriber has prior investment experience, including investment in non-listed and unregistered securities, or the Subscriber has employed the services of an investment advisor, attorney and/or accountant ro read all of the documents furnished or made available by the Company both to the Subscriber and to all other prospective investors in the Units and to evaluate the merits and risks of such an investment on the Subscriber's behalf.

4.4. <u>Due Diligence.</u>  The Subscriber hereby acknowledges receipt and careful review of the Offering Documents, as supplemented and amended, and the attachments and exhibits thereto all of which constitute an integral part of the Offering Documents, and hereby represents that the Subscriber has been furnished by the Company during the course of this transaction with all information regarding the Company which the Subscriber has requested or desired to know, has been afforded the opportunity to ask questions of and receive answers from duly authorized managers, officers or other representatives of the Company concerning the terms and conditions of the offering and has received an additional information which Subscriber has requested.

4.5. <u>Protection of Interests; Exempt Offering.</u>  The Subscriber hereby represents that the Subscriber either by reason of the Subscriber's business or financial experience or the business or financial experience of the Subscriber's professional advisors (who are unaffiliated with and who are not compensated by the Company or any affiliate of the Company, directly or indirectly) has the capacity to protect the Subscriber's own interests in connection with the transaction contemplated hereby.  The Subscriber hereby acknowledges that the offering has not been reviewed by the United States Securities and Exchange Commission (the "SEC") because of the Company's representations that this is intended to be exempt from the registration requirements of Section 5 of the Act.  The Subscriber agrees that the Subscriber will not sell or otherwise transfer the Units unless they are registered under the Act or unless an exemption from such registration is available.

4.6. <u>Investment Intent.</u>  The Subscriber understands that the Units have not been registered under the Act by reason of a claimed exemption under the provisions of the Act which depends, in part, upon the Subscriber's investment intention. In this connection, the Subscriber hereby represents that the Subscriber is

purchasing the Units for the Subscriber's own account for investment and not with a view toward the resale or distribution to others.  The Subscriber, if an entity, was not formed for the purpose of purchasing the Units.

4.7.  <u>Restricted Securities.</u>  The Subscriber understands that there currently is no public market for any of the Units and that even if there were, Rule 144 promulgated under the Act requires, among other conditions, a one-year holding period prior to the resale (in limited amounts) of securities acquired in a non-public offering without having to satisfy the registration requirements under the Act.  The Subscriber understands and hereby acknowledges that the Company I under no obligation to register the Units under the Act or any state securities or "blue sky" laws.  The Subscriber consents that the Company may, if it desires, permit the transfer of the Units out of the Subscriber's name only when the Subscriber's request for transfer is accompanied by an opinion of counsel reasonably satisfactory to the Company that neither the sale nor the proposed transfer results in a violation of the Act or any applicable state "blue sky" laws (collectively, the "Securities Laws").  The Subscriber agrees to hold the Company and is members, manager, officers, employees, controlling persons and agents and their respective heirs, representatives, successors and assigns harmless and to indemnify them against all liabilities, cost and expenses incurred by them as a result of any misrepresentation made by the Subscriber contained in this Agreement or any sale or distribution by the Subscriber in violation of the Securities Laws.  The Subscriber understands and agrees that in addition to restrictions on transfer imposed by applicable Securities Laws, the transfer of the Units will be restricted by the terms of this Agreement.

4.8.  <u>Legends.</u>  The Subscriber consents to the placement of a legend on any certificate or other document evidencing the Units that such Units have not been registered under the Act or any state securities or "blue sky" laws and setting forth or referring to the restrictions on transferability and sale thereof contained in the Agreement.  The Subscriber is aware that the Company will make a notation in its appropriate records with respect to the restrictions on the transferability of such Units and may place additional legends to such effect on Subscriber's unit certificate(s).

4.9.  <u>Rejection.</u>  The Subscriber understands that the Company will review this Agreement and that the Company reserves the unrestricted right to reject or limit any subscription and to close the offering to the Subscriber at any time.

4.10. <u>Address.</u>  The Subscriber hereby represents that the address of the Subscriber furnished by the Subscriber on the signature page hereof is the Subscriber's principal residence.

4.11. <u>Authority.</u>  The Subscriber represents that he or she has full power and authority to execute and deliver this Agreement and to purchase the Units.  This Agreement constitutes the legal, valid and binding obligation of the Subscriber, enforceable against the Subscriber in accordance with its terms.

5.  <u>Limitations on Transfer</u>.

5.1. <u>Company Right of First Refusal.</u>  The Subscribers shall not assign, encumber or dispose of any interest in any of the Units except in compliance with applicable state and federal laws.

6. <u>Miscellaneous.</u>

6.1. <u>Survival of Representations and Warranties</u>.  The warranties, representations and covenants of the Company contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing for a period of one (1) year following the last Closing.

6.2. <u>Governing Law</u>.  NOTWITHSTANDING THE PLACE WHERE THIS AGREEMENT MAY BE EXECUTED BY ANY OF THE PARTIES HERETO, THE PARTIES EXPRESSLY AGREE THAT ALL THE TERMS AND PROVISIONS HEREOF SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

6.3. <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.4. <u>Titles and Subtitles</u>.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

6.5. <u>Notices</u>.  (A) All notices, request, demand and other communications under this Agreement or in connection herewith shall be given to or made upon the respective parties as follows: if to the Subscribers, to the addresses set forth on the signature page hereto, or, if to the Company, to EquiAlt Fund, LLC, c/o Duane Morris LLP, Attn: Paul R. Wassgren, 100 N. City Parkway, Suite 1560, Las Vegas, Nevada 89106.          (B) All notices, requests, demands and other communications given or made in accordance with the provisions of the Agreement shall be in writing, and shall be sent by certified or registered, return receipt requested, or by overnight courier or telecopy (facsimile) with confirmation of receipt, and shall be deemed to be given or made when receipt is so confirmed.
(C) Any party may, by written notice to the other, alter its address or respondent and such notice shall be considered to have been given ten (10) days after the airmailing, telexing or telecopying thereof.

6.6. <u>Brokers</u>.  (A) Each Subscriber severally represents and warrants that it has not engaged, consented to or authorized any broker, finder or intermediary to act on its behalf, directly or indirectly, as a broker, finder or intermediary in connection with the transactions contemplated by this Agreement.  Each Subscriber hereby severally agrees to indemnify and hold harmless the Company from and against all fees, commissions or other payments owing to any such person or firm acting on behalf of such Subscriber hereunder.  The Company will pay finder's fees only in compliance with applicable law.      (B) The Company agrees to indemnify and hold harmless the Subscribers from and against all fees,

commissions or other payment owing by the Company to any other person or firm acting on behalf of the Company hereunder.

6.7. Expenses.  If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

6.8. Third Parties.  Nothing in the Agreement shall create or be deemed to create any rights in any person or entity not a party to this Agreement.

6.9. Amendments and Waivers.  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company and Subscribers holding a majority in interest of the Units purchased in the offering.

6.10. Severability.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

6.11. Entire Agreement.  This Agreement and the other Offering Documents constitute the entire agreement between the parties hereto pertaining to the subject matter herof, and any and all other written or oral agreements existing between the parties hereto are expressly canceled.


*(Signature page follows.)*

This Subscription Agreement has been executed as of the date last set forth below.

NUMBER OF UNITS: ~~250,000~~ 25,000

at $10.00 PER UNIT

FOR THE AGGREGATE PURCHASE PRICE: $____ 250,000 ____

**SUBSCRIBER:**

Print or Type Name of Subscriber: _Georgia Murphy_____

Signature: _____   Second Signature if Jointly: _____

Title of Signatory: _____

If jointly subscribed manner in which Title to be held:
_____

Address: ██████████████████████

Telephone: ████████████████

Facsimile: _____

Tax I.D. #: ████████_____

Dated: ___12-1-16____

This Subscription Agreement is agreed to and accepted as of: 12/21/16

**EQUIALT FUND , LLC**

**a Nevada limited liability company**

By:   EquiAlt, LLC

        a Nevada limited liability company

        its Manager

        By:_____

            EquiAlt, its Manager